DENTON *v.* MAMMOTH SPRING ELECTRIC LIGHT & POWER COMPANY.

Opinion delivered October 21, 1912.

1.  MASTER AND SERVANT—INJURY TO SERVANT—PRESUMPTION.—Where a servant is injured while employed in his master's service, the fact of the accident carries with it no presumption of negligence on the master's part.   (Page 165.)

2.  SAME—MASTER'S NEGLIGENCE—SUFFICIENCY OF EVIDENCE.—A servant injured in the master's service can not recover for the master's negligence where under the evidence it is a matter of conjecture whether the injury was due to the master's negligence or to some other cause.   (Page 166.)

Appeal from Fulton Circuit Court; *John W. Meeks*, Judge; affirmed.

STATEMENT BY THE COURT.

This is an action by appellant against appellee to recover damages for personal injuries received by him in the course of his employment. The material facts are as follows:

Appellee is a corporation engaged in erecting, maintaining and operating an electric power plant in the town of Mammoth Spring, Fulton County, Arkansas, and in September, 1910, appellant was in its employ assisting in the work of repairing its lines. Appellant had had some experience in repairing telephone and telegraph lines before he went to work for appellee. On the 12th day of July, 1910, appellant commenced to work for appellee, and his work until the latter part of August consisted in digging holes, setting poles and stringing wire on them. He was then put to work helping to repair appellee's lines in the town of Mammoth Spring, and had been at work with live wires or wires carrying very heavy charges of electricity for about two days when he was injured. On the day appellant was injured, he and De Holt, another servant of appellee, started to climb a pole which had live

wires on it.   The foreman of appellee called Holt back, saying there was not room on the pole for both of them to be safe. Then appellant started up, and the foreman told him to get on the inside of the pole, and then he could clear the wires as he went up, and he turned on the pole and went up on the inside.   The pole was double-armed; the wires from the power house were on the first arms, and the wires going up in town were on the second arms.   Attached to the post was a guy-wire, which was not insulated, and which did not have a circuit breaker in it.   The guy wire was fastened around the pole about four inches below the lower cross arm, and extended from there downwards to a guy stub and from there into the ground.   Two of the wires were carrying a very heavy voltage, and these were called the primary wires; the other wires were carrying electricity, and were called the secondary wires, and were not nearly so heavily charged as the primary wires.   If a person should come in contact with one of the live wires on his arm and another portion of his body should be in contact with one of the secondary wires, while he would not get the full primary voltage, he would get about one-half or a little over one-half of it.   It would burn him, and would kill him if he should stay there long enough.   The evidence also shows that if a person should come in contact with one of the live wires and the guy wire that would make a circuit.   It would have injured or killed him according to the length of time the contact continued.

The appellant testified:  "I had helped put the guy wire on the pole the day before, and appreciated the danger of working among live wires, but did not know the danger of coming in contact with a live wire and the guy wire at the same time.   The foreman did not explain this danger to me when I started up the pole.   He did tell me that the wires were hot; by which I understood that some of the wires were live wires.   I climbed up the pole, as directed by the foreman, and had worked for about thirty minutes when I was injured. It was a very hot day, and I was wet with perspiration at the time I was hurt.   My work consisted in helping to tighten the wires.   I had on climbers, and was standing on the second arm.   My head was above the wires, and my feet were on a level with the lower wires.   I was sitting straddle of this arm.

It was dark and cloudy, and was threatening to rain. The business men of the town could not get along without the lights in their stores, and we just went ahead with the current on. "I was up on the pole pulling this slack, and the lightning was blazing something fierce, and the last I knew there was a streak of lightening, and I did not know anything." He was asked: "Q. You may state to the jury if you had any knowledge or appreciation of the danger?" "A. I always knew that if you got on both of the primary wires something would happen, but I did not know anything about the guy wire. I never had thought about that." On cross examination he was asked: "Q. Now, you knew also that these live wires, these uninsulated wires, that it was dangerous to come in contact with them, did not you?" "A. Two of them at one time, yes, sir." "Q. You do not know whether you come in contact with two live wires or with a live wire and a guy wire?" "A. I can't say that I can answer that question." In referring to a statement relative to the injury alleged to have been made by him, he was asked: "Q. I will ask you if you did not further state that you might have come in contact with the primary wires that your arm might have come against it and made a circuit with one of the lower wires, and that it might have touched the guy wire and hurt it that way?" "A. I can answer that like I did the other." "Q. You can surely say whether it might have occurred that way or not?" "A. No, no one will ever know or even can tell whether that happened that way." "Q. That is what I thought?" "A. I thought you knew that without asking questions, no man can tell, when he is shocked by electricity, how it happened."

Another witness for appellant testified that he looked up immediately after appellant was shocked, and that appellant's arm was lying over a wire, and that his foot was tilted in against the pole, that his head and shoulders were above the wires, and that his foot or leg, as best he could judge, was against the guy wire. That the power house was near by, and that the foreman ran to it at once and cut off the current. That appellant then fell to the ground, and they picked him up and carried him into a house.

The physicians who examined him testified that his

right arm was burned pretty badly just above and just below the elbow, that there was some small burns on his hip and one further down below the knee.   His arm had to be amputated, and the burn below the knee was longer in healing than those on the hip.

The appellee adduced evidence tending to show that the appellant knew and appreciated the danger of working among live wires, and had so represented himself at the time he was hired by appellee.   The appellant in rebuttal denied this, and said that he had only worked two days among live wires at the time he was injured.

The court directed a verdict for appellee, and the case is here on appeal.

*David L. King,* for appellant; *Lehman Kay,* of counsel.

1.   Courts should submit questions of fact arising upon the issues to the jury under proper instructions if there is any question about which different conclusions might be drawn.   *Headrick* v. *Williams Cooperage Co.,* 97 Ark. 553.   It is error to direct a verdict if there is any testimony to support the allegations, giving it its strongest probative force. 21 Am. & E. Ann. Cases, 1002.

2.   It is the master's duty to exercise reasonable care to furnish reasonably safe place to work and appliances.   126 S. W. 191; 142 Mo. App. 248; 132 S. W. 32.   Plaintiff was not warned of latent defects, nor did he assume the risks nor was he negligent.   22 A. & E. Ann. Cas. 1002; 89 Ark. 527; 89 Ark. 537; 77 *Id.* 367.   The primary cause was the negligence of the master.   4 Thompson on Negligence 498; 98 Ark. 227. Risks of latent dangers are not assumed by a servant.   81 Ark. 275; 73 *Id.* 49; 29 *Id.* 275.

3.   The question of negligence is not of age but of intelligence, and is for the jury.   27 S. W. 66; 43 Am. St. 30.

*C. E. Elmore* and *McCaleb & Reeder,* for appellee.

1.   This case falls within two of the exceptions to the general rule as to a master's duty to furnish safe place to work, etc. 1 Labatt on Master and Servant, § 29; 61 S. C. 491; 84 Ga. 491; 84 *Id.* 14; 133 S. W. 777.

2.   Plaintiff was injured on account of his own negligence.

91 Ark. 107; 63 *Id.* 65; 76 *Id.* 436; 77 *Id.* 458; 78 *Id.* 100; 80 *Id.* 261.

3. The burden was on plaintiff to prove negligence and proximate cause. 87 Ark. 217; 82 *Id.* 372; 18 S. W. 172; 87 Ark. 321; 26 Cyc. 1149, note 9. It was an accident purely, and no recovery can be had. 105 N. W. 197; 33 L. R. A. 492; 32 *Id.* 700; 113 N. Y. 378; 60 Am. St. 433.

4. Plaintiff assumed the risk. 135 S. W. 892; 95 Ark. 136; 560; 96 *Id.* 500; Jones on Tel. and Tel., § 198.

HART, J., (after stating the facts). Where the servant has been injured while in the course of his employment, the fact of the accident carries with it no presumption of negligence on the part of the master, and it. is an affirmative fact for the injured employee to establish that the employer had been guilty of negligence. *St. Louis, I. M. & S. Ry. Co.* v. *Harper,* 44 Ark. 524.

In the case of *Patton* v. *Texas & Pacific Ry. Co.,* 179 U. S. 658, Mr Justice Brewer, speaking for the court, said:

"It is not sufficient for the employee to show that the employer may have been guilty of negligence—the evidence must point to the fact that he was. And where the testimony leaves the matter uncertain, and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is liable and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion."

In the case of *Coin* v. *John M. Talge Lounge Co.,* 222 Mo. 488, 17 A. & E. Ann. Cas. 888, the court held: "If an accident causing injury to a servant may have resulted from either one of two causes, for one of which the master is liable and for the other of which he is not, the servant, in an action to recover for the injury, must show with reasonable certainty that the cause for which the master is liable produced the injury; and, if the evidence merely leaves this to conjecture, the plaintiff must fail in his action."

To the same effect see *Green* v. *Southern Railway Company,* 5 A. & E. Ann. Cas. 165, and case note; *Schultz* v. *C., M. & St. P. R. Co.,* 116 Wis. 31.

If the appellant was injured by coming in contact with the primary and secondary wires with his body, it is evident that he can not recover, for he himself testified that he knew and fully appreciated this danger.  He admits that he knew some of the wires were heavily charged with electricity before he began to climb the pole, and that he fully understood the risk he ran in working among them.  Therefore, if he was injured by his body coming in contact with the primary and secondary wires, he must be deemed to have assumed the risk.  Neither the appellant nor any of his witnesses undertake to to say just how the accident happened.  The appellant himself testified that it could have been produced by any one of three causes:  (1) by coming in contact with two wires, (2) by lightning, (3) by coming in contact with one of the primary wires and the guy wire at the same time.

Under the testimony there is no more reason to suppose that it was due from one of these causes than the other.  The cause of the accident is purely a matter of conjecture, and "a servant can not recover where it is merely a matter of conjecture, surmise, speculation or supposition, whether the injury was or was not due to the negligence of the master." 2 Labatt on Master & Servant, 167.

Therefore, the court properly directed a verdict for appellee, and the judgment is affirmed.