PRESLEY *v.* ACTUS COAL COMPANY.

Opinion delivered January 10, 1927.

1. MASTER AND SERVANT—PERSONAL INJURIES—JURY QUESTIONS.—In an action for death of an employee, the issues of negligence, contributory negligence and assumption of risk *held*, under the evidence, to be issues for the jury.

2. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—The verdict of a jury on the issue of fact, on which there was conflicting evidence, is conclusive on appeal.

3. TRIAL—INSTRUCTION IGNORING ISSUES.—In an action for the death of an employee, an instruction authorizing the jury to find for the plaintiff if the defendant was negligent, was properly refused where it ignored the defenses of assumed risk and contributory negligence.

4. TRIAL—INSTRUCTION SUBMITTING STATUTE.—In an action against a mining company for negligence causing the death of an employee by electrocution, an instruction giving in charge § § 7145, 7146, of Crawford & Moses' Digest, without setting out such sections or explaining them in connection with the facts, was properly refused.

5. MASTER AND SERVANT—INSTRUCTION AS TO ASSUMED RISK.—In an action against a coal mining company for the negligently caused death of an employee, an instruction that deceased assumed the risk if he departed from the line of duty to fix an electric light globe or wire, *held* proper, in view of the evidence.

6. APPEAL AND ERROR—NECESSITY OF MOTION FOR NEW TRIAL.—Refusal of requested instruction will not be considered on appeal where it was not made a ground of the motion for new trial.

7. MASTER AND SERVANT—NEGLIGENCE—INSTRUCTION.—In an action for the death of an employee, an instruction that, if the death could have been due to either of two causes, only one of which involved negligence on defendant's part, the jury should return a verdict for defendant, was not open to a general objection.

8. MASTER AND SERVANT—NEGLIGENCE—INSTRUCTION.—In an action for the death of an employee, an instruction that defendant can not be held liable for the result if deceased came to his death in a manner that could not have been reasonably anticipated or foreseen, was not erroneous.          ·

9. MASTER AND SERVANT—NEGLIGENCE—EVIDENCE.—In an action for alleged negligence of a mining company causing electrocution of a miner, it was not error to exclude a question whether more than 110 voltage was necessary for ordinary lighting purposes, where it was not alleged that the light wire carried an excessive and dangerous current.

Appeal from Sebastian Circuit Court, Greenwood District; *John E. Tatum,* Judge; affirmed.

. *I. S. Simmons, U. C. May* and *O. R. Smith,* for appellant.

*Pryor, Miles & Pryor,* for appellee; *Geo. W. Johnson* and *T. D. Wynne,* of counsel.

WOOD, J.  This is an action by the administrator of the estate of F. S. Bratcher, deceased, against the Actus Coal Company, to recover damages for the benefit of the estate and next of kin of F. C. Bratcher.  For his cause of action the plaintiff alleged that the defendant is an Arkansas corporation engaged in the mining of coal; that Bratcher was an employee of the defendant; that, acting under the orders and directions of its agents and servants, Bratcher was driving a mule pulling coal from the rooms in the mine out to the parting, where the cars were picked up and carried to the top of the mine by electric power; "that the defendant, its agents and servants in authority, negligently and carelessly failed to furnish Bratcher a reasonably safe place in which to work, in that it negligently and carelessly failed to furnish and keep in repair a suitable and proper transformer to reduce the current of electricity to proper voltage on light wire and to keep a switch at or near said parting in a known and convenient place, so that electric power could be turned off; that the defendant negligently and carelessly failed to keep said wire on said parting, which wire furnished electricity for said light on said parting, properly insulated and the current

properly reduced; that, on the second day of December, 1924, without fault or carelessness on the part of Bratcher, he, while in the discharge of his duty, came in contact with a live wire on said parting, which wire was made alive by reason of insufficient insulation, and which wire carried a very heavy and excessive and unnecessary voltage of electricity, transferring same to the body of Bratcher, seriously and painfully torturing and burning him, from which effect he died, to plaintiff's damage for the benefit of the estate in the sum of $25,000, and to plaintiff's damage for the benefit of Bratcher's wife and minor child in the sum of $34,500. Plaintiff therefore prayed judgment in the aggregate sum of $59,500.

The plaintiff alleged that Bratcher died intestate, leaving a widow and minor son, and that plaintiff was the duly appointed administrator of Bratcher's estate.

In the answer of the defendant all the material allegations of the complaint are denied, and, for affirmative defenses, the defendant sets up that Bratcher had assumed the risk and was guilty of contributory negligence. The answer admits that the defendant is a corporation and that plaintiff was the duly appointed and acting administrator of the estate of Bratcher, deceased.

The undisputed testimony shows that Bratcher was killed while working in a coal mine operated by the defendant on December 2, 1924. He was killed by coming in contact with a live electric-light wire which carried two hundred and fifty volts of electricity.

John Elliott, one of the witnesses for the plaintiff, testified in substance that he assisted in putting up the wire, which was new when installed, and which had been in use three months at the time of Bratcher's injury. At the time it was installed it was properly insulated. He had not recently inspected it. He did not see Bratcher until he was dead. He had to go 600 feet from the place where Bratcher was killed to turn off the current. The current could have been turned off instantly if a switch

had been at the No. 3 parting, the accident occurring on the main slope. Bratcher must have had his fingers a-hold of the light socket, as the globe was broken in some manner. There was no switch on the main wire where the light wire turned off from it. Bratcher was lying on the track, both hands and the light bulb under him. The light bulb was in the socket that morning, but was burned out.

Gene Newman was with Bratcher when witness took Bratcher loose from the wire. The wire came from the main wire around Bratcher's back and under him. Witness was about five minutes getting to him after he received information that he was injured. Bratcher was about five or six feet high. He might have touched the wire. It was away from the track he had crossed to pull the coal from the parting. Bratcher and Gene Newman worked together. Bratcher had to pull past the place to get to the parting, but did not have to go under it. Bratcher was supposed to be at the parting at 7:30 A. M., and he was killed at 2 P. M., after he had made more than a dozen trips back and forth from the parting. The mules turned in about five feet of the light or near, at times. On other occasions they turned about ten feet away. In the morning Bratcher would have to go under the light with the mules. Witness did not know how the wire happened to be down. The globe was in the socket that morning. Witness found the socket with the outside gone and the inside intact.

Gene Newman was the only eye witness to the injury. He testified that Bratcher hollered out, saying, "Knock me loose." Witness looked, and Bratcher's hands were up a-hold of the wire two feet from the light globe. Witness knocked the wire down, and Bratcher fell with both hands under him, across the track, with the wire wrapped around his body. The closest switch was 200 feet away. Elliott turned off the current from five to eight minutes after Bratcher was struck. Miners had to pass under this light and wire in a stooped position.

Sam Settles testified that he was an electrician. A wire properly insulated, according to his testimony, carrying 250 volts, would not electrocute a person coming in contact with it. If Bratcher came in contact with the wire and was electrocuted, the insulation was not proper. The power could be cut off instantly with a switch. If Bratcher was electrocuted, he stuck to the wire because the insulation was not proper. Two hundred and fifty volts passing over a properly insulated wire would not electrocute a person and would not fasten a person taking hold of a light bulb. Witness could not crush with his fingers a bulb of the kind exhibited if it were properly screwed into the socket. If a party broke the globe and got his hands against the small wires, he could not get loose. One hundred and ten volts might kill—had been known to kill.

Roberts testified that it was customary for the miners to work along under the light. They were right there together any time the empties were on the track. The drivers, in order to get loads out, had to go right under the wire. The workers went back under the wire to get water to drink. They could stoop around the other way and not go under the wire, but it was the usual thing for them to go under the wire. The company had not given Bratcher any orders not to pass under the wire. They had given no instructions that there was any danger lurking around the wire or light bulbs. The ground under the lamp was damp. The light globe had been out a week. Witness saw nothing in Bratcher's hand. If witness had not known the wire to be there, he would not have seen it in passing under it.

One of the witnesses testified that the men working in the mine turned off from the main entry a short distance from the light. They passed on into the entry under the wire across the parting, the only way they could go. There was testimony tending to show that the light was put where it was for the engine at the hoist and for the convenience of the drivers.

One of the witnesses for the defendant testified that he saw the burns on Bratcher's hands, and it looked as if he had caught hold of something. The globe was broken off in the socket at the time the witness saw Bratcher. There were four or five cuts on Bratcher's hand. Little jagged edges of glass remained in the socket, and witness thought the glass made the cuts. The wire carrying the light jet had burned out. The little wires would be charged with electricity. Both of Bratcher's fingers, his thumbs, and a spot about his navel, were burned when witness knocked the wire down. Bratcher had hold of it with both fingers. There was a drop about six inches from the wire, the light bulb being four feet and eight inches from the ground. Witness never saw the wires in contact with Bratcher or in his hands. If one came in contact with the little wires in the socket he would be shocked.

The mine foreman of the defendant testified to the effect that he saw Bratcher immediately after he was killed. Witness was not an electrician, but had worked all over the country where they had electricity. Bratcher was lying on his back, dead, when witness saw him. The light bulb hung down six or seven inches below the timber. The wire had been up about three months. Witness saw it every day, and had instructed one of the workmen to put it there. There are wires in the mine which had been there four years, and the insulation was still good. The globe was in the socket about 11 A. M., and the accident occurred between one and two P. M. When they got the wire down, the globe was gone. Witness saw the burns on Bratcher's fingers and body. Witness knew positively that the wires were properly insulated and dry. The only way Bratcher could have been killed was that he took hold of the globe, trying to screw it in the socket, and caught hold of the wire, broke the glass, burned and cut himself. He was standing on props, and got off and swung this way, throwing the wire under there, and fell on the wire. It made a short circuit with

his body, and killed him. That is all witness could see that would have killed him. The driver's duty is to pull coal, and not to handle wires or lights. The wire was safe, dry, properly insulated, and, if Bratcher had attended to his own business, he would not have been hurt.

The plaintiff asked witness Sam Settles, an electrician, the following question: "Is it necessary, for ordinary lighting purposes, to have a lamp with more than 110 voltage?" The defendant objected to the question, and the court sustained the objection.

Among other instructions, the plaintiff asked the court to instruct the jury as follows:

"No. 2. You are instructed that, if you find from the evidence in this case that defendant had notice of the defective condition of the light bulb and wire in question and failed to use reasonable and ordinary care to repair same, and the deceased came in contact with same and was electrocuted, and plaintiff suffered damages thereby, then your verdict shall be for the plaintiff."

"No. 6. The court gives you in charge § 7145, Crawford & Moses' Digest of the Laws of the State of Arkansas, and § 7146, Crawford & Moses' Digest of the Statutes of Arkansas."

In instructions Nos. 8 and 9, granted at the request of the defendant, the court told the jury, in effect, that if Bratcher, while working in the mine as driver for the defendant, for some unknown reason took hold of the incandescent light globe which was not burning, and that the lighting of said mine or the handling of said globe was not in the line of his employment, and that in so doing Bratcher acted without direction from the officers or agents of the defendant, then Bratcher assumed the risk of handling such light globe, and, if such act caused his death, he could not recover, and the verdict of the jury should be in favor of the defendant.

The appellee's prayers for instructions numbered 13 and 14 are as follows:

"No. 13. The court instructs the jury that, if you find from the evidence that the death of the deceased was due to one of two causes, one of which could involve negligence on the part of defendant, the other only an incident for which the defendant is not liable, then, under the law, it would be your duty to adopt the theory which would relieve the defendant from any charge of negligence, and therefore it would be your duty to return a verdict for the defendant.

"No. 14. You are instructed that the defendant company cannot be held liable for the result of any act or omission the results of which could not have been reasonably foreseen or anticipated. And in this case, if you find that the deceased came to his death in such a manner as could not have been reasonably anticipated or foreseen by the defendant company, you will find for the defendant."

The jury returned a verdict in favor of the defendant. Judgment was rendered in defendant's favor, from which the plaintiff duly prosecutes this appeal.

1. The issues of negligence, contributory negligence and assumption of risk were, under the evidence, issues of fact for the jury. There was testimony to warrant the jury in finding that the appellee had exercised ordinary care to furnish Bratcher a safe place to work. The testimony does not tend to prove that the particular place where Bratcher was required to "pull" the cars was at all unsafe. Bratcher had gone from the place where he was required to do his work, and could do the same in safety, to the place where there was an electric light globe and wire. It was not his duty to fix the electric light and wires. That was the duty of the electrician. The testimony tended to prove that the workers in the mine, including the drivers of the mules pulling the cars, had carbide lamps on their caps to give them light. The testimony tends to prove that Bratcher was killed by attempting to fix the electric light globe. He had departed from his regular work and his duty to do this.

There was testimony to warrant the jury in finding that the electric light wire was properly insulated, and that Bratcher came in contact with the little wires in the socket holding the electric light bulb or globe, when he broke the same in attempting to screw it up or to fix it in some manner, and that his fingers were caught; that this caused his electrocution. The voltage was sufficient to kill him, as the proof tends to show. The jury might have found that the wire outside of the socket was properly insulated, or they might have found that the wire was not properly insulated. This testimony made it a question of fact as to whether the appellee was negligent in not properly insulating the electric wires, but the verdict of the jury on this issue of fact is conclusive here in favor of the appellee.

2. The court did not err in refusing appellant's prayer for instruction No. 2. The instruction ignored the affirmative defenses of assumption of risk and contributory negligence, and authorized the jury to find for the plaintiff if they found that the appellee was negligent.

There was no error in refusing appellant's prayer for instruction No. 6. This instruction does not set out the sections of the statute mentioned in it and does not request an explanation of these statutes making the same applicable to the facts adduced in evidence. This court has held that it is error for the trial court to give statutes without an explanation thereof in connection with the facts, where an explanation was necessary. An explanation would have been necessary here. *Kansas City, etc., Ry. Co.* v. *Becker*, 63 Ark. 477, 39 S. W. 358.

The court did not err in granting appellee's prayer for instructions Nos. 8 and 9. These instructions, in effect, told the jury that Bratcher assumed the risk if he departed from his line of duty in order to fix the electric light globe or wire, and correctly declared the law applicable to the facts which the testimony tended to prove.

We have not set out and do not comment upon prayers for instructions numbered 10 and 12, of which the

appellant complains in his brief, for the reason that the granting of these prayers is not made a ground of the motion for a new trial.

Instruction No. 13 was in substantial compliance with the law as announced by this court in *Fort Smith Light & Traction Co.* v. *Cooper,* 170 Ark. 286, 280 S. W. 990, and *Denton* v. *Mammoth Spring Electric Light & Power Co.,* 105 Ark. 161, 150 S. W. 572. No specific objection was made to the instruction, and it was not inherently erroneous.

Appellee's prayer for instruction No. 14 declared the law applicable to the facts in substantial conformity with the rule announced by this court in *Pekin Stave Co.* v. *Ramey,* 108 Ark. 488, 158 S. W. 156. The instruction was, in effect, the same as instruction No. 4, which was refused by the trial court in that case and which was by this court, on appeal, approved as a correct declaration of law. Only a general objection was made to the instruction.

3. The court did not err in refusing to permit the witness Sam C. Settles to testify that the amount of electricity carried and conducted to the light bulb was excessive and dangerous. This assignment of error in the motion for a new trial is not in conformity to the record as to the question which was asked the witness in his examination. The question was, "Is it necessary, for ordinary lighting purposes, to have a lamp with more than 110 voltage?" That issue was not presented by the pleadings and was not involved.

The issues were correctly submitted to the jury under the instructions of the court, and there was testimony to support the verdict. We find no error in the record, and the judgment is therefore affirmed.