MISSOURI PACIFIC RAILROAD COMPANY *v.* HORNER.

Opinion delivered April 1, 1929.

322

*Thomas B. Pryor, Vincent M. Miles* and *Thomas B. Pryor, Jr.,* for appellant.

*Dave Partain* and *Starbird & Starbird,* for appellee.

MEHAFFY, J. Appellee brought this suit in the circuit court, alleging that in January, 1927, he was in the employ of the appellant, at the particular time loading wheels on freight cars, and, on the 13th day of January, was ordered and directed by his immediate foreman and boss in said work to quit that work and move a load of air-brake cylinders about 100 feet to the place where they should be stacked; that the cylinders were large, heavy machinery, each separate piece weighing about 300 pounds; that it was a job for two men, and that, when

appellee was ordered to do this work, he asked for a helper, and the foreman promised to furnish him a helper.

The cylinders had to be moved across a crane track which had just been put in, and along which there were soft and muddy places, and across a railroad track to a platform, upon which the same were to be lifted and stacked. He alleged that it was raining at the time, and no danger was apparent; but, whatever danger there was, was obscure. He had never been employed in moving machinery of the kind and weight, and did not foresee any danger, but he knew if he refused to do the work alone that he would lose his job. He moved several of the cylinders to the platform, and was engaged in moving one across the crane track, when, on account of the wet, muddy and dangerous condition of the ground, track and foundation, and the weight and form of said machinery, the same slipped into a ditch, in and under the crane track, and in the emergency, in trying to save himself and the machinery and prevent the same from falling into the ditch and in and under the crane track, plaintiff's back and muscles and ligaments thereof were wrenched, sprained and torn, and plaintiff was permanently injured. He was afterwards put in the bolt room, where the work was light, but was required to sign a release of liability for his injury. He believed that he was not injured very much, and would soon recover, and signed the release; but, instead of recovering and being able to work, he grew rapidly worse. He spent about three weeks in the hospital, attended by the company doctor. That, before the injury, plaintiff was able to do the work which any other man could do, but since his injury he is only able to do very light work, and no work that requires strength in his back.

The appellant answered, denying all the material allegations of the complaint, and pleaded in bar the release signed by appellee, and pleaded assumed risk.

There was a judgment for the appellee, and appellant filed a motion for a new trial, which was overruled, and this appeal is prosecuted to reverse said judgment.

No one saw the accident except appellee himself, and there is therefore no testimony except his as to how it occurred. He testified that on the day of the injury he was helping load wheels, and that his foreman, Mr. Reeder, came over and said to him, ''Go over there and move some airbrake cylinders.'' There were eight of them to be moved, and they weighed 300 pounds apiece. They had to be moved across a crane track, and put on a platform. He had been working about 30 feet from the place where the cylinders were to be moved. He asked his foreman for help, and the foreman told him to go on to work and he would get him some help, and he started to work moving the cylinders; got three over, and started with the fourth one. It got down where they had dug out for this track, and it was soft there. They had not quite filled up around it. It was filled with cinders, and they had settled down after the rain. He started across the track with this cylinder, and it slipped down into this hole. They had started filling the hole the day before. It was soft around that place. When he got this fourth one over to this place and started across, it slipped off down in this hole. He went to one side and lifted it up, and then to the other side. It had been raining, and the ground was wet and slick. When he started out with the other side it threw him around and hit his back against this concrete. It hurt him pretty bad, and he started to the office.

The above is all the testimony there is in the record as to how appellee received his injury.

Appellant first contends that the evidence is not sufficient to sustain the verdict. In other words, that the evidence of the appellee himself failed to show any negligence on the part of the appellant.

The appellee testifies that the cylinders, he thought, weighed 300 pounds, but he admitted that he had not weighed them.

The foreman testified that the cylinders were round, and would roll; that they were 46½ inches in length and 12 inches in diameter, and weighed 225 pounds.

The evidence shows that the cylinders were to be moved about 50 feet, and the appellee had actually moved three of them, and, in moving the fourth one, the ground was wet and slippery, and it slipped into a hole.

There is no dispute about the appellee being injured. There are many injuries to persons and property for which the law furnishes no redress, and proof of injury alone, without proof of negligence causing the injury, does not entitle one to recover. One is entitled to recover for negligence only when the negligence complained of causes the injury. The negligence complained of principally in this case is that the appellee asked for a helper, and appellant's foreman promised him a helper, but did not furnish one, and that, because he did not furnish the helper, appellee was injured. As to the place to work and the condition of the ground, there is no evidence tending to show that there was any negligence as to these things. The negligence, if any, was in failure to furnish a helper, because, on account of the condition of the ground and the weight of the cylinders, one man could not do the work in safety.

In the case of *Choctaw, O. & G. R. Co.* v. *Jones*, 77 Ark. 367, 92 S. W. 244, this court said: ''The liability of the master for injuries to servant rests primarily on the broad principle of law that where there is fault there is liability, but where there is no fault there is no liability.''

The court in the above case also said, in speaking of the law as to the assumption of risk:

''The rule here seems to be that one who, knowing and appreciating the danger, enters upon a perilous work, even though he does so by order of his superior, must bear the risk. In other words, even though he may perform the work unwillingly under orders from his superior, yet, if there was no physical compulsion, and if he knew and appreciated the danger thereof, he will in law be treated as having elected to bear the risk, and cannot hold the employer liable if injury results.''

In the instant case, so far as the conditions of the ground and place where appellee had to work are concerned, they were as well known to him as they were to the master. They were not only well known, but the condition and danger, if any, were obvious. But he bases his right to recover on the fact that these things made a helper necessary, and that the foreman ordered him to proceed with the work and that he would get him a helper. The cylinders were round; the undisputed proof shows that they could be rolled. The testimony of the appellee himself shows that they were to be removed about 50 feet to a platform, and then lifted on to the platform and stacked. It is conceded that there should be two men to lift them on the platform where they were to be stacked.

Appellee made no complaint to the foreman about the condition of the ground or the weight of the cylinders. His only complaint was that he needed a helper. And, even if he complains about the condition of the ground or the place where he had to work, this risk, if any, was so obvious that he was bound to know all about it, and he therefore assumed the risk. His testimony, as we have said, is the only testimony as to how the injury occurred, and he says that the cylinder slipped into the hole, and he moved one end of it on one side of it and then went to the other to move that; that it had been raining, and the ground was wet, and, when he started to move it, it threw him around. Just how the cylinder threw him around is not stated. He evidently slipped, or the cylinder slipped, and the fact that he had hold of it threw him around, as he says, and caused the injury.

Appellee contends that, if he had had a helper, as the foreman promised him, the injury would not have occurred. There is no evidence tending to show what a helper could have done to prevent the cylinder from slipping. As we have said, the undisputed proof shows that the cylinders were round; that they could be rolled, and he had already moved three of them without any

injury, and he does not undertake to show by evidence what a helper could have done that would have prevented the injury. If there was anything that a helper could have done in assisting in removing it that would have prevented the injury, the appellee could show that, and he offered no evidence whatever to show it.

It is unnecessary to set out the other evidence, because we have reached the conclusion that the appellee's evidence, the only evidence as to how the injury occurred, is not sufficient to support the verdict.

The questions of assumed risk and safe place to work have been before this court so many times that we deem it unnecessary to extend this opinion by citing and commenting on the authorities. The rule is well settled in this State that the master is required to use ordinary care to furnish a reasonably safe place to work, and it is also well settled that the servant assumes the obvious risks and risks about which he knows. This court has recently said:

"In the application of the doctrine of assumption of risks, a distinction must be also made between those cases where the injury is due to one of the ordinary risks of the service and where it is due to some altered condition of the service, caused by the negligence of the master. The servant is presumed to know the ordinary risks. It is his duty to inform himself of them, and, if he negligently fails to do so, he will still be held to have assumed them." *Ward Furniture Mfg. Co.* v. *Weigand,* 173 Ark. 762, 293 S. W. 1002.

The court in the above case also said: "In other words, the defense of assumed risk rests on the fact that the servant voluntarily, or at least without physical coercion, exposed himself to the danger, and thus assumed the risk thereof. Having done this of his own accord, he has no right, if any injury results, to call on another to compensate him therefor, whether he was guilty of carelessness or not."

In the instant case the appellee voluntarily assumed this risk. He did not ask for any change in the place where he was to work; he did not complain of the place where he had to work. As we have said, his only complaint was that he was promised a helper, and the failure to furnish a helper was the cause of his injury. But, before he would be entitled to recover for failure to furnish a helper, the burden is on him to show by the evidence that such failure caused or contributed to the injury. This the evidence does not show.

Appellant also contends that instruction No. 1 should not have been given, and, under the evidence as developed in the trial, this instruction was not proper. It was an instruction about the duty of the master to furnish a safe place to work, and, as there was no complaint about the place to work, and especially because the appellee knew all about it and assumed the risk, this instruction, under the circumstances, should not have been given.

Appellant also contends that the instructions requested by it and refused by the court should have been given, but we have carefully considered all of the instructions given and refused, and have reached the conclusion that, except instruction No. 1, given at the request of the plaintiff, there is no error in the instructions.

The judgment of the circuit court is reversed, and the case remanded for a new trial.