MISSOURI PACIFIC RAILROAD COMPANY *v.* BAUM.

4-5061

Opinion delivered May 23, 1938.

*Thomas B. Pryor, H. L. Ponder, Jr.,* and *H. L. Ponder,* for appellants.

*J. B. Dodds* and *L. A. Hardin,* for appellee.

DONHAM, J. It is alleged by appellee that he was injured while riding as a passenger on one of appel-

lants' trains. He purchased a ticket at Little Rock for Claremore, Oklahoma, on December 28, 1936, leaving Little Rock about 10:45 p. m. He states that while the train on which he was a passenger was making the stop at Russellville, Arkansas, he was thrown from the toilet seat in one of the coaches by reason of a lurch or jerk of the train. He alleges the train stopped suddenly, causing him to be thrown off the commode and strike his head against the wash basin. He alleges that his head was hurt, finger broken, back wrenched, and that he also sustained a rupture.

Appellants denied each and every material allegation of the complaint, and further set up, as defenses, contributory negligence and assumption of risk on the part of appellee.

Upon a trial of the issues, a verdict was returned in favor of appellee for the sum of $200. Judgment for said amount was rendered by the court; and, from said judgment, appellants have appealed.

It is contended by appellants that the evidence is not sufficient to sustain the verdict of the jury; and that the judgment of the court, therefore, should be reversed and the cause dismissed. At the conclusion of the evidence, appellants asked the court to give their requested instruction No. 1, which was a peremptory instruction to find for appellants. The court refused to give said instruction, to which refusal of the court proper exception was saved by appellants.

Of course, in determining whether or not the evidence is sufficient to sustain the judgment, the evidence must be viewed in the most favorable light to appellee, giving thereto its greatest probative value in his favor, together with every reasonable inference deducible therefrom. Viewed in this light, the question is, was the evidence sufficient to show that appellants were negligent in the operation of the train on which appellee was a passenger, thereby causing injury to appellee?

Appellee testified that the train arrived at Russellville about 11:30 p. m.; that as it approached Russellville, he was in the toilet, and that there was a sudden jar

which threw him off the commode, causing his head to strike the wash basin; that it hurt his head, broke his finger, wrenched his back, and that he got a rupture; that he was knocked unconscious, and that he must have lain on the floor fifteen or twenty minutes. He stated that he did not know whether the train was at the edge of the town or in the town of Russellville. When asked whether the jerk was an ordinary one, he said: "It was a sudden jerk, and all of them steel cars,—they just jolted together; it was a sudden jolt." He was then asked whether the jolt was harder than usual. And he answered: "I don't know nothing about that. I don't travel enough to notice that."

It was shown by the evidence that appellee had been confined in the State Hospital for Nervous Diseases at different times for several years prior to the time of the alleged accident; and, therefore, it was necessary for him to bring the suit by guardian. A physician from the hospital for nervous diseases testified that the nature of appellee's mental disease was such that he was given to exaggeration. His condition was such that he was being taken to Claremore, Oklahoma, for treatment. That is, he was being taken there to rest and to take the baths. He was accompanied by an attendant whose duty it was to look after him. This attendant's name was S. H. Latture. Latture testified that along about the time the train reached Russellville he went back to the toilet and found the door locked; that appellee had been in the toilet about fifteen or twenty minutes; that he went back again and appellee unlocked the door. He asked appellee why he was staying in the toilet so long and appellee said: "I fell off the seat when they stopped." When asked if he noticed any cut on appellee's head, witness answered: "Just a little bruised spot was up over his eye. It just bled a little bit over one eye is all I noticed. I didn't notice that he was hurt." When asked if appellee complained about his finger being hurt, he said: "No, he never told me anything about his finger." He was then asked whether appellee complained of being otherwise hurt, and he answered: "After we got up to Claremore

he said he was sore across his back; that he had kind of hurt his back when he fell off the stool, and he grunted with his head a right smart." Witness further said that appellee told him when they started to go to bed after reaching Claremore that he had skinned his knee. Witness further stated that he was sitting in the coach at the time of the alleged accident; and when asked to state whether he felt any hard jar, he answered: "Of course, it was more or less a little jar all along when they stopped; I couldn't say where the jars were. When we stopped at Russellville they stopped a little sudden." When asked whether the jar was hard enough to knock one off the toilet seat, he answered: "I don't know whether it would be or not—I don't know whether it would have jerked a man off the stool or not. They stopped suddenly all the way along it seemed like on that train; of course, it is pretty rough riding, that road is, all the way up. That isn't just a right smooth railroad, it doesn't seem to me like; of course, I am not used to riding on trains very much."

On cross-examination, witness stated that he didn't remember just how the train stopped at Russellville—that there were several places that they stopped pretty suddenly; but that he couldn't say about Russellville.

J. E. Page, the engineer, Wiley Welch, the conductor, and Frank Jones, the train porter, were introduced as witnesses on behalf of appellants; and all testified that there was no unusual or rough handling of the train at Russellville or elsewhere on the trip from Little Rock to Claremore.

In view of this state of the record, was there sufficient evidence to submit to the jury as to whether appellants were guilty of negligence resulting in injury to appellee?

In order to make a railroad company liable to a passenger injured by a jolt or jerk of the train, the rule, as stated in 10 C. J., § 1387, page 973, is as follows:

"The jerk or jolt must be unnecessarily or unusually sudden or violent; such jerks and jars as are necessarily incident to the use of the conveyance, and are not

the result of negligence, will not render the carrier liable for resulting injuries."

In American Jurisprudence, vol. 10, p. 213, § 1343, it is said: "Sudden jerks and jolts in the movement of railroad trains or street cars are generally accepted as among the usual incidents of travel, which every passenger by experience has learned to expect to some extent. At precisely what point such violent movements lose their character as incidents reasonably to be expected during the course of travel and assume the status of actionable negligence is a question of fact, to be determined in the light of the surrounding circumstances. However, unusually sharp jerks of a vehicle or violent jolting due to a defect in the track or the negligent operation of the car has been frequently viewed as imposing liability upon the carrier for the resulting injuries to a passenger."

Again, it is said in § 1345 of the same volume:

"Swaying of railroad trains or street cars is of rather common and frequent occurrence, and results in numerous instances from the natural inequalities of surface and necessary curves, switches, and guard rails in the construction of the roadbed, without the existence of any negligence in the carrier or a remediable defect in the track or roadbed. In order to furnish sufficient ground for an action against a railroad or other common carrier for injuries to a passenger from the swaying of a car, it must appear that the swaying was more than is ordinarily to be expected and that it was due to a defect in the car or track, a negligent or dangerous rate of speed, or some other cause for which the carrier can be held responsible."

In the case of *Chesapeake & Ohio Railroad Co.* v. *Needham,* (C. C. A. 4th), 244 Fed. 146, it was held that negligence cannot be predicated upon the swaying and lurching movements of a car which necessarily attend the proper and careful operation of a passenger train, because such movements are risks which the passenger assumes.

In the case of *Foley* v. *Boston & M. R. Co.*, 193 Mass. 332, 79 N. E. 765, 7 L. R. A., N. S. 1076, it was held that

jolts and lurches in the management of trains are at times unavoidable, notwithstanding a high degree of care on the part of the carrier, and that for injuries resulting from these unavoidable jolts and lurches the carrier is not liable.

The carrier is not an absolute insurer of the safety of its passengers. It is only required to exercise toward its passengers the highest degree of care which a prudent and cautious man would exercise, and that which is reasonably consistent with the mode of conveyance and practical operation of its trains. *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Purifoy*, 99 Ark. 366, 138 S. W. 631; *Railway Co.* v. *Sweet*, 60 Ark. 550, 31 S. W. 571; *Railway Co.* v. *Murray*, 55 Ark. 248, 18 S. W. 50; *Arkansas Midland Railway Co.* v. *Canman*, 52 Ark. 517, 13 S. W. 280.

In the case of *Turner* v. *Hot Springs Street Railway Company*, 189 Ark. 894, 75 S. W. 2d 675, this court said:

"The trial court was correct in directing a verdict for appellee, because the testimony adduced by appellant was not sufficient to show that the injuries received were proximately due to any negligence of appellee. No witness testified that appellant's fall was proximately due to the small pieces of snow and ice afterwards seen in the vestibule of the street car. It is true, the jury might have guessed or speculated that her fall was caused by stepping upon the small pieces of ice and packed snow in the vestibule of the street car, but, on the other hand, it was equally as probable that her fall was caused by packed snow or ice which had accumulated on her own shoes. The point is, juries are not permitted to guess or speculate as to the proximate cause of an alleged injury, the burden resting upon appellant to show by a preponderance of the evidence that her injuries were caused by some negligent act or omission of appellee." Citing, *Covington* v. *Little Fay Oil Co.*, 178 Ark. 1046, 13 S. W. 2d 306; *Kirkpatrick* v. *American Railway Express Co.*, 177 Ark. 334, 6 S. W. 2d 524; *Missouri Pacific Rd. Co.* v. *Horner*, 179 Ark. 321, 15 S. W. 2d 994; *International Harvester Co.* v. *Hawkins*, 180 Ark. 1056,

24 S. W. 2d 340; *Ft. Smith L. & T. Co.* v. *Cooper,* 170 Ark. 286, 280 S. W. 990; *Denton* v. *Mammoth Springs Electric Light & Power Co.,* 105 Ark. 161, 150 S. W. 572.

In the same case, the court quoted with approval the rule laid down in the case of *Patton* v. *Texas & Pacific Railway Company,* 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361, as follows:

"It is not sufficient for the employee to show that the employer may have been guilty of negligence—the evidence must point to the fact that he was. And where the testimony leaves the matter uncertain, and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion."

The law is that negligence is never presumed, but, like fraud, must be proven. Except in cases where the doctrine of *res ipsa loquitur* applies, negligence is not even presumed from proof of the happening of an accident and resulting injury.

As hereinabove stated, a jolt or jerk of the train, resulting in injury to a passenger, will not render the railroad company liable, unless the jolt or jerk is unnecessarily or unusually sudden or violent. In other words, a jerk or jar which is necessarily incident to the mode of the conveyance and the practical operation of the train is not the result of negligence, and, even though injury results therefrom, the carrier cannot be held liable. When appellee was asked whether the jolt which he claims threw him off the toilet seat was harder than usual, he stated that he knew nothing about that; that he didn't travel enough to notice that. His attendant, Latture, when asked about whether there was a jar hard enough to knock one off a toilet seat, said he did not know whether there was or not; that the railroad was not right smooth; and that he was not accustomed to riding on trains very much.

244

In view of the state of the record as to whether or not the jolt or jar which appellee alleges threw him off the toilet seat was unnecessarily or unusually sudden or violent, we are of the opinion that there was no substantial evidence to submit to the jury. Appellee could not say that the jar was unusually sudden or violent, neither could his attendant, Latture. The evidence of the members of the train crew who testified was to the effect that there was no unusual handling of the train and no unusual or sudden jerks or jars.

From what we have said, it is apparent that the trial court erred in not directing a verdict for appellants. The judgment is, therefore, reversed; and the cause, having been fully developed, is dismissed.