ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY *v.* PORTER.

4-5619                    134 S. W. 2d 546

Opinion delivered November 13, 1939.

*J. W. Jamison, Paul Gutensohn and Warner & Warner,* for appellant.

*Partain & Agee,* for appellee.

McHANEY, J.   Appellee became a passenger on one of appellant's trains at Rudy, Arkansas, on August 15.

1938, at about 11:20 a. m., going to Fort Smith. After she had boarded said train and had entered a coach to take her seat, she says the train was started with a sudden and violent jerk, causing her to fall across an arm of a seat so as to inflict the injuries of which she complains.

She brought this action to recover damages in the sum of $3,000 for such alleged injuries on September 19, 1938.. The negligence alleged in the complaint is that the operatives of said train suddenly, carelessly and negligently started the train with an unusual, sudden and violent lurch and jerk, throwing her violently against the seat, and seriously and permanently injuring her, as therein set out. The answer was a general denial and a plea of contributory negligence. Trial resulted in a verdict and judgment for appellee for $3,000, the full amount sued for, and this appeal followed.

We think the court erred in not directing a verdict for appellants, on their motion so to do, at the close of all the testimony.

Appellee was the only witness in her own behalf as to the manner in which the train was started after she had boarded it at Rudy. She testified that, as she was walking down the aisle of the coach into which she had been directed by the conductor, "the train gave a quick, hard jerk and threw me across the arm" of the seat in which another passenger, the witness Highfield, was sitting. She said: "I didn't fall plumb down, but did fall on my knees"; again she said she was caused to fall by "the sudden quick jerk. It seemed to jerk so suddenly that it jerked my feet from under me and I had no way of protecting myself there, and it threw me across this arm and there was a man sitting in that seat"; and again, "it started awfully hard and suddenly. After I had gotten on the train, it jerked so quick and hard that it jerked my feet from under me and I tried to catch with my suit case, and I had my purse under my arm and it threw me across the seat."

This, in brief, is all the testimony she gave as to the negligent manner of starting the train. In contradiction of her testimony, there is in the record the tes-

timony of the conductor, the brakeman, the fireman, the engineer, and six passengers on the train in the same car which appellee entered. All of them say there was no sudden or unusual jerk of the train in starting, but on the contrary that it moved off smoothly and without any noticeable jerk or jar. One of these passengers was Mr. W. K. Woffard, a fellow townsman of appellee, and well acquainted with her. He testified: "If there was any jerk, I didn't feel it any whatever, I didn't even know when the train started." He got on the train immediately following appellee. Of the other five passengers, one was an employee of appellants, and was traveling on a pass, and another was an employee of the Western Union Telegraph Company, and was also traveling on a pass. If we should say, and we do not, that the jury had a right to disregard the testimony of the five employees of appellants, because of their relationship, certainly it had no right to disregard the testimony of the other five passengers, four of whom were paying passengers, wholly without any interest in the litigation. Neither did the trial court, on the motion for a new trial, have the right to disregard their testimony. This court has many times said that where the verdict is against the preponderance of the evidence, it is the duty of the trial court to set it aside. Here, appellee, vitally interested in the result, is contradicted by ten witnesses, five of whom are employees, but are corroborated by five others who have absolutely no interest in this case.

It is difficult to see how the jury could render the verdict it did under this state of the record, or how the trial court could permit it to stand. It is not only against the preponderance of the evidence, for which we would not reverse, but the evidence of appellee is not sufficient to support a finding of negligence, and the verdict, therefore, should have been directed against her. We do not mean to intimate that the preponderance of the evidence is to be determined alone by the number of witnesses testifying on either side of the case, for such is not the law. The rule in this court is that where the trial court overrules a motion for a new trial, it is tantamount to a

finding by it that the verdict is supported by a preponderance of the evidence, and that the question of where the preponderance of the evidence lies will not be determined by this court on appeal. But whether there is evidence of a substantial nature to support the verdict and judgment will be inquired into in this court, as that is a question of law and not of fact.

It is well settled in this state, as said in the recent case of *Missouri Pacific Railroad Co.* v. *Baum,* 196 Ark. 237, 117 S. W. 2d 31, a case relating to the question of a sudden or unusual jerk or jar of the train on which Baum was a passenger, resulting in injury for which he sued, that: "The carrier is not an absolute insurer of the safety of its passengers. It is only required to exercise toward its passengers the highest degree of care which a prudent and cautious man would exercise, and that which is reasonably consistent with the mode of conveyance and practical operations of its trains. Citing cases. . . . The law is that negligence is never presumed, but, like fraud, must be proven. Except in cases where the doctrine of *res ipsa loquitur* applies, negligence is not even presumed from the proof of the happening of an accident and resulting injury."

It is conceded by appellee that the mere starting of the train before she had reached her seat, but after she had safely boarded it, does not constitute actionable negligence. The gist of the negligence alleged is that the train started with a sudden lurch or jerk. But if it be conceded, contrary to all the evidence except that of appellee herself, that the train was started with a jerk or a lurch, that fact would not justify a recovery, unless there was a negligent jerking or lurching of the train. It was so held in *Harris* v. *Bush, Receiver,* 129 Ark. 369, 196 S. W. 471, where it was said: "There is much evidence tending to show that there was no unusual jerking or lurching of the train either at Argenta or while slowing down to a stop at the Little Rock station. Unless it was a negligent jerking or lurching of the train, it is apparent that appellant had no cause of action against appellee. In other words, if the injury was purely acci-

dental and not the result of the negligent operation of the train, appellee would not be responsible.'' Again in the same case it was said, ''There is no escape from the conclusion that unless appellant was injured through the negligent jerking or lurching of the train, then her injury must have resulted from some carelessness on her own part. The inherent probabilities in this record strongly point to the fact that this injury must have resulted in some other manner than the manner outlined by appellant. She has described such an unusual lurching and jerking of the train as would hardly escape the notice of all the train men and two disinterested passengers. It is hardly probable that she would have been the only one to receive an unusual jar. It is out of the ordinary that she would be the only one to receive a fall or injury.''

In *McCluskey* v. *Shenango Valley Trac. Co.*, 105 Pa. Sup. Ct. 275, 161 Atl. 424, under similar facts as here related, the court said: ''We are of one mind that the testimony, when viewed in the light most favorable to plaintiff, does not measure up to the standard which has been fixed by the decisions upon the subject of the requisite proof to establish negligence in cases of this character. A fall caused by a sudden stop while one is walking in a moving street car will not be held sufficient to convict the trolley company of negligence, unless the negligent character of the stop is evidenced by its disturbing effect on the other passengers or unless intrinsic evidence of the unusual character of the jolt or jerk appears in its effect on the person injured. We are of the opinion that the words 'sudden jerk,' 'unusual jerk,' 'a jump of the car' and 'it threw me violently on the floor,' as used by plaintiff in describing the jerk, and the words of her witnesses that the car 'started unusually sudden,' when not accompanied by testimony inherently establishing the extraordinary character of the starting of the car, or by evidence of its effect upon other passengers who would have been disturbed by an unusual or extraordinary jolt of the car, are insufficient to sustain a finding of negligence. Nor is the defect supplied by plain-

tiff's statement that 'everybody in the car lurched.' Under all our cases such descriptive language is not sufficient proof of negligence. The character of plaintiff's fall was not so violent and unusual as to permit the jury to predicate on it alone a finding that the jerk was extraordinary and unusual and therefore negligent. As we have pointed out before, it is common knowledge that one's balance or equilibrium is more easily lost when walking in a moving car than when seated.''

Appellee was walking down the aisle of the car with a suit case in one hand and a handbag or purse in the other, or under her arm. Any movement of the train would tend to unbalance her and cause her to fall. It was not negligence for the train to start and to apply as much steam pressure in the cylinders of the locomotive as was necessary for the purpose of starting the train. All the witnesses, except herself, say that the train started in the usual and ordinary way. She assumed all the ordinary risks and hazards necessarily incident to the usual and ordinary manner of starting the train, and the expletives or epithets used by her in describing the manner of the start, did not change the manner of the start. No one else on the train was disturbed not even the passenger who boarded the train immediately following her who said that the train was started with such ease that he did not notice when it started, nor was there intrinsic evidence of the unusual character of the jerk appearing in its effect upon her.

We are, therefore, of the opinion that the appellee failed to establish any negligence in the manner of starting the train, and that the judgment should be reversed and the cause dismissed.

Humphreys, Mehaffy, and Baker, JJ., dissent.