CAPITAL TRANSPORTATION COMPANY *v.* HOWARD.

4-9164                                        229 S. W. 2d 998

Opinion delivered May 22, 1950.

334

House, Moses & Holmes and William M. Clark, for appellant.

Harry C. Robinson and William J. Kirby, for appellee.

HOLT, J. March 23, 1949, appellee, Mattie Howard, brought this suit to recover damages for personal injuries alleged to have been received when she fell in the aisle of appellant's electric trolley bus, because of appellant's negligence in operating the bus.

Appellant answered with a general denial and affirmatively pleaded contributory negligence of appellee. A jury awarded appellee $600, and from the judgment on the verdict is this appeal.

Appellant makes no complaint as to the amount of the verdict but earnestly contends that there was no substantial evidence to warrant it.

After a review of all the testimony, we hold that this contention must be sustained.

Only three witnesses, who were on the bus at the time of the mishap, testified in the case. September 8, 1948, appellee, a Negro woman, weighing about 250 pounds, boarded appellant's bus, carrying a sack of

groceries. After paying her fare, she proceeded to the rear, but just before she reached her seat the bus gave a "sudden jerk" or "snatched" and she fell to the floor receiving injuries. Appellee testified: "A. I got on the bus at 9th and Chester. When I started back to my seat, I made it almost to the seat, when I turned to wheel the bus gave a sudden jerk and flattened me out on the floor. Q. Did the bus start immediately when you got on it? A. It started immediately, when I got on the bus it started up immediately. When I got back nearly to where I thought I would have a seat it gave a jerk and jerked me down. . . . Q. Do you know what caused that sudden jerk? A. I don't know what would make the bus, the driving of the bus would be the only thing that would make a sudden jerk. Q. It did jerk? A. It jerked me flat of my back, laid me out on the floor, stretched me out just like (making motion with hands). Q. Did it tear your grocery bag? A. Tore the grocery bag and broke the handle off my purse. Q. Did it daze or addle you? A. Yes, sir, it dazed me pretty bad, I didn't know how bad I was until that night."

Willie Jiles, on behalf of appellee, testified that she was a passenger at the time, sitting in the rear. She saw appellee, along with several other people, get on the bus, and further: "A. Just to tell the truth, I didn't pay any attention, they were all getting on the bus, I didn't pay any attention until she hit the floor, that is when I looked, I was looking out through the window when the bus stopped, I was sitting where I could see out the window, when the bus started off she fell. I didn't know who it was at the time because there were some, some more standing up there and I kinder looked around I said 'Oh, who was that hit the floor' a man picked her up, I don't know who he was but I did see her fall. Q. Had the bus proceeded some ways past the corner where she got on before she fell? A. I just don't know, to tell you the truth I wasn't paying so much attention because when I am on a bus I don't pay any attention to who gets on and off, I was looking through the window when the bus started off and she fell, I saw that. Q. Did anything at-

tract your attention other than her falling? A. When the bus started off it was a snatch. Q. You felt the snatch when she fell? A. Yes, I heard her falling and I peeped around some other passenger and saw her laying on the floor, I spoke to someone, I said 'a mighty big woman to fall.' "

On behalf of appellant, the bus driver, L. O. Gary, testified: "A. Well, she boarded my bus at 9th and Chester. She had a sack of groceries, she deposited her fare in the box, . . . I started the bus immediately after she deposited her fare and she walked back to the rear of the bus, naturally as anyone would, and I just drove on down the street as naturally as I always do. I had driven about half a block when I heard a sack hit the floor. . . . I immediately glanced up in the rear view mirror and saw a Negro man pick up the sack of groceries and hand it to a colored lady, just set them in her lap and he sat back down," that appellee later came up and asked for a transfer but made no complaint.

There appears no disagreement as to the law governing cases of this nature. The same standard of care is required in the operation of trains, buses, street cars and trolley buses. Our rule is well settled that we must affirm where there appears any substantial evidence to support the jury's verdict. It is also our duty to view the evidence in the light most favorable to the appellee, giving to it, its strongest probative value, in her favor, with every reasonable inference deducible from it, whether from all the evidence presented or from appellee's testimony only, (*Harmon* v. *Ward,* 202 Ark. 54, 149 S. W. 2d 575, and *St. Louis Southwestern Railway Company* v. *Holwerk,* 204 Ark. 587, 163 S. W. 2d 175).

As we read the testimony of appellee and her witness, Jiles, in the light of the above rules, it amounts to this: After appellee had boarded the bus with a sack of groceries in her arms, she paid her fare, walked toward a seat in the rear and when "almost to the seat, when I turned to wheel, the bus gave a sudden jerk and flattened me out on the floor."

Jiles testified that the bus "snatched" just before appellee fell. Neither of these witnesses, nor any other, testified that there was a violent or unusual jerk.

Before appellee would be entitled to recover, the burden was on her to show, by some substantial testimony, that her fall and consequent injuries resulted from a violent or an unusual jerk, amounting to negligence on the part of appellant in operating its bus. We so held, in effect, in such cases as *St. Louis-San Francisco Railway Co.* v. *Porter,* 199 Ark. 133, 134 S. W. 2d 546; *Missouri Pacific Railroad Company* v. *Baum,* 196 Ark. 237, 117 S. W. 2d 31, and *Missouri Pacific Transportation Co.* v. *Bell,* 197 Ark. 250, 122 S. W. 2d 958.

In the Baum case, Judge DONHAM, speaking for the court, quoted with approval, the following rule from 10 C. J., § 1387, page 973, as follows: " 'The jerk or jolt must be unnecessarily or unusually sudden or violent; such jerks and jars as are necessarily incident to the use of the conveyance, and are not the result of negligence, will not render the carrier liable for resulting injuries.'

"In American Jurisprudence, Vol. 10, p. 213, § 1343, it is said: 'Sudden jerks and jolts in the movement of railroad trains or street cars are generally accepted as among the usual incidents of travel, which every passenger by experience has learned to expect to some extent. At precisely what point such violent movements lose their character as incidents reasonably to be expected during the course of travel and assume the status of actionable negligence is a question of fact, to be determined in the light of the surrounding circumstances. However, unusually sharp jerks of a vehicle or violent jolting due to a defect in the track or the negligent operation of the car has been frequently viewed as imposing liability upon the carrier for the resulting injuries to a passenger.' . . .

"The carrier is not an absolute insurer of the safety of its passengers. It is only required to exercise towards its passengers the highest degree of care which a prudent

and cautious man would exercise, and that which is reasonably consistent with the mode of conveyance and practical operation of its trains. . . .

" 'It is not sufficient for the employee to show that the employer may have been guilty of negligence—the evidence must point to the fact that he was. And where the testimony leaves the matter uncertain, and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion.'

"The law is that negligence is never presumed, but, like fraud, must be proven. . . . As hereinabove stated, a jolt or jerk of the train, resulting in injury to a passenger, will not render the railroad company liable, unless the jolt or jerk is unnecessarily or unusually sudden or violent. In other words, a jerk or jar which is necessarily incident to the mode of the conveyance and the practical operation of the train is not the result of negligence, and, even though injury results therefrom, the carrier cannot be held liable."

In the present case, it is highly significant that appellee was the only passenger on the bus, wherein other passengers were standing, to receive a fall or injury, and made no complaint to the bus driver.

Juries are not permitted to speculate as to the proximate cause of what made appellee fall. In *Turner* v. *Hot Springs Street Railway Company*, 189 Ark. 894, 75 S. W. 2d 675, this court said: "The trial court was correct in directing a verdict for appellee, because the testimony adduced by appellant was not sufficient to show that the injuries received were proximately due to any negligence of appellee. No witness testified that appellant's fall was proximately due to the small pieces of snow and ice afterwards seen in the vestibule of the street car. It is true, the jury might have guessed or speculated that her

fall was caused by stepping upon the small pieces of ice and packed snow in the vestibule of the street car, but, on the other hand, it was equally as probable that her fall was caused by packed snow or ice which had accumulated on her own shoes. The point is, juries are not permitted to guess or speculate as to the proximate cause of an alleged injury, the burden resting upon appellant to show by a preponderance of the evidence that her injuries were caused by some negligent act or omission of appellee. (Citing cases.)''

In the Porter case, above, we said: ''It is conceded by appellee that the mere starting of the train before she had reached her seat, but after she had safely boarded it, does not constitute actionable negligence. The gist of the negligence alleged is that the train started with a sudden lurch or jerk. But if it be conceded, contrary to all the evidence except that of appellee herself, that the train was started with a jerk or lurch, the fact would not justify a recovery, unless there was a negligent jerking or lurching of the train. . . . 'There is no escape from the conclusion that unless appellant was injured through the negligent jerking or lurching of the train, then her injury must have resulted from some carelessness on her own part. . . . It is hardly probable that she would have been the only one to receive an unusual jar. It is out of the ordinary that she would be the only one to receive a fall or injury.' ''

As indicated, we agree with appellant that the rule followed in the Porter, Baum and Bell cases applies here and that appellee has failed to show, by any substantial testimony, such an unusual, violent or unnecessary jerk or lurch of the bus, not assumed by the passenger, which would amount to negligence on the part of the Transportation Company.

Speaking of the rule applied in the above three cases, this court in the recent case of *Jones* v. *Missouri Pacific Railroad Company, Thompson, Trustee,* 202 Ark. 333, 150 S. W. 2d 742, made this comment: ''In the Baum and the Porter cases the injured passenger had safely boarded

the train and it was held that before a recovery could be had, it was necessary to show some unusual, violent and unnecessary lurch or jerk of the moving train not assumed by the passenger which would amount to negligence on the part of the railroad company, and that no such negligent conduct had been established.

"In the Bell case the plaintiff was attempting to alight from a bus and in so doing fell in the aisle and was injured when the bus stopped, which Bell contended was occasioned by an 'unusual, unnecessary or a violent jerk,' and it was there said: 'It is undoubtedly true that appellee fell in the bus, and it may be true that she was injured in the fall, but the proof fails to show that it was the result of the second stopping, or that the second stopping, if any, was sudden, unnecessary or violent, and these were the grounds of negligence relied on in the complaint and without proof of which no recovery can be sustained.' "

Accordingly, the judgment is reversed, and since the cause seems to have been fully developed, it is dismissed.

GRIFFIN SMITH, C. J., not participating.

Justices MILLWEE and GEORGE ROSE SMITH dissent.