125 So.2d 128 (1960)
Moses BLACKMAN, a minor, by his father and next friend, Jamie Blackman and Jamie Blackman, individually, Appellants,
v.
MIAMI TRANSIT COMPANY, a Florida corporation, Appellee.
No. 60-13.
District Court of Appeal of Florida. Third District.
December 8, 1960.
Rehearing Denied January 3, 1961.
Kelner & Lewis and Fred Patrox, Miami, for appellants.
Blackwell, Walker & Gray and John R. Hoehl, Miami, for appellee.
CARROLL, CHAS., Judge.
The appellant Moses Blackman, a boy 8 years of age, joined by his father, sued the Miami Transit Company for damages for personal injuries which he received while riding as a passenger on a bus operated by the defendant. The cause proceeded to trial before a jury. At the close of the plaintiffs' case, a motion by the defendant for a directed verdict was granted, and judgment was entered thereon.
Plaintiffs appealed, and assigned as error that "the court erred in directing a verdict in favor of the defendant at the close of plaintiffs' case inasmuch as the plaintiffs had adduced a prima facie case."
The evidence disclosed that on an afternoon, between 2 and 3 o'clock, the minor plaintiff and his mother were passengers on the defendant's bus. They were seated toward the front of the bus, on a longitudinal seat on the right-hand side. The boy was sitting forward of his mother. *129 The bus made a sudden or "quick" stop. The boy fell over or was thrown forward (to his right) and struck his head against a metal bar. The only evidence of the speed of the bus was testimony by the boy and his mother that the bus was going "fast", and the only evidence of a sudden stop was the mother's testimony that it stopped "quickly.[1]"
The testimony as to speed of the bus was not in miles per hour. When asked about its speed the witness said, "He was going faster than he usually goes." She testified that she had ridden the bus numerous times, but nothing was shown to establish the speed at which "he usually goes." No basis for a comparison was furnished.
It was brought out that when the bus stopped it was traveling in a straight line. There was no evidence that it swerved or swayed. The stop was described as sudden or "quick," but there was no evidence bearing on the cause or reason for it. The boy was sitting on the longitudinal seat with his feet dangling, and thus was in a position to be toppled over by moderate force. No other passengers were injured or thrown from their seats.[2]
Testimony relating to speed of a vehicle, which does not give the speed in miles per hour, but states only that the vehicle was going "fast" (implying too fast), is lacking in quality and probative force.[3] We have been shown no Florida decision ruling on the question of the admissibility or value of testimony that a vehicle was going "fast". Although in some jurisdictions such testimony has been held inadmissible when offered to show negligence through speed,[4] generally it is received in evidence for such value as it may have.[5] But testimony that a vehicle was driven "faster than usual," without showing its speed on that occasion, or its usual rate of speed, does not furnish a basis to find that an improper speed was used. Standing alone, testimony that the *130 vehicle was going fast or faster than usual, is insufficient to establish excessive speed.[6]
Appellant contends testimony that the bus was going "fast" or "faster than usual," coupled with testimony that it stopped suddenly or "quickly," was sufficient evidence of negligence to have required the trial judge to submit the case to the jury. We do not agree. The appellee argues, and we feel correctly, that with the evidence as to speed of the bus being inadequate upon which to find excessive speed, the testimony that the bus stopped suddenly, without showing the reason or circumstances, did not make out a prima facie case of liability, notwithstanding the conceded duty of the defendant as a common carrier to exercise the highest degree of care consistent with practical operation of the bus.
Ruling out stops of extraordinary violence, not incidental to ordinary travel, as inapplicable to the stop which occurred here,[7] the sudden stopping of the bus was not a basis for a finding that the bus was negligently operated, in the absence of other evidence, relating to the stop, of some act of commission or omission by the driver which together with the "sudden" stop would suffice to show a violation of the carrier's duty. This is so because a sudden or abrupt stop, which could be the result of negligent operation, could as well result from conditions and circumstances making it entirely proper and free of any negligence.[8]
Affirmed.
HORTON, C.J., and WALDEN, JAMES H., Associate Judge, concur.
NOTES
[1] The boy's mother testified on those points as follows:

"A. Just before the bus got to 36th Street, he was driving fast, quickly, and he stopped and threw Moses to one side and threw him against the iron rail near the door and bumped his head, and Moses started crying. A knot come up on his head and I started crying too. * * *
"Q. As you got close to 36th Street, can you tell me the speed of the bus as compared to other occasions that you had ridden the bus? A. He was going faster than he usually goes.
"Q. He was going faster than he usually goes? A. Yes.
"Q. Can you describe for me how the bus stopped again? A. He stopped quickly. * * *
"Q. Whatever this bus did slow down for, or whatever it did, you didn't observe yourself as to why it had? You didn't see why the bus driver had slowed down? A. No, sir."
The boy's testimony included:
"Q. You just tell these folks, like you were telling the kids down the street, about how you got hurt. Will you do that? A. Yes, sir. Well, he was going fast and then he stopped and I hit my head against a piece of iron.
"Q. Now you tell these gentlemen what happened to you out there, what you remember? A. The bus was going fast and it stopped, and I hit my head up against a piece of iron."
[2] Capital Transp. Co. v. Howard, 217 Ark. 333, 229 S.W.2d 998, 1000; Sunthimer v. Baltimore Transit Company, 217 Md. 52, 141 A.2d 527; Cocivera v. Philadelphia Transportation Company, 190 Pa. Super. 50, 152 A.2d 272, 274.
[3] Bates v. Escondido Union High School Dist., 9 Cal. App.2d 43, 48 P.2d 728, 729; Brock v. Waldron, 127 Conn. 79, 14 A.2d 713, 715; Gibson v. Nassau Electric R. Co., 185 App.Div. 320, 173 N.Y.S. 198, 199; Layman v. Gearhart, 389 Pa. 187, 132 A.2d 228, 232.
[4] Schackelford v. Commercial Motor Freight, Inc., Ohio App. 1945, 65 N.E.2d 879, 880; Warruna v. Dick, 261 Pa. 602, 104 A. 749, 750.
[5] Crowley v. Dix, 136 Conn. 97, 68 A.2d 366, 368; Consolidated Coach Corporation v. Earl's Adm'r, 263 Ky. 814, 94 S.W.2d 6, 9, 10; Vanosdol v. Henderson, 216 Ind. 240, 22 N.E.2d 812, 816 and references cited therein.
[6] Sonnenburg v. Monumental Motor Tours, 198 Md. 227, 81 A.2d 617; Tamagno v. Conley, 1948, 322 Mass. 218, 76 N.E.2d 637; Burkes v. Lieberman, 218 App.Div. 600, 218 N.Y.S. 593; Presser v. Dougherty, 239 Pa. 312, 86 A. 854; Williams v. Hemphill County, Tex.Civ.App. 1952, 254 S.W.2d 839; See also Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505.
[7] Gongolewicz v. City of Cleveland, Ohio App. 1952, 104 N.E.2d 703, and cases cited therein.
[8] Edwards v. Des Moines Transit Company, Iowa, 99 N.W.2d 920; Burke v. Enders, 305 Mich. 270, 9 N.W.2d 537; Quinn v. Colonial Motor Coach Corporation, 266 N.Y. 584, 195 N.E. 211; Cocivera v. Philadelphia Transportation Company, supra, note 2; Annotation 57 A.L.R.2d 5 (1958).