162 So.2d 530 (1964)
CITY OF CORAL GABLES and City of Coral Gables d/b/a Coral Gables Municipal System, Appellants,
v.
Linda PATTY, a minor, by and through her father and next friend, Carl Patty and Carl Patty, individually, Appellees.
No. 63-483.
District Court of Appeal of Florida. Third District.
March 17, 1964.
Rehearing Denied April 21, 1964.
Smith & Poole, Kenneth L. Ryskamp, Miami, for appellants.
Green & Hastings and Irma Robbins Feder, Miami, for appellees.
Before HORTON, TILLMAN PEARSON and HENDRY, JJ.
HENDRY, Judge.
The appellants, defendants below, were sued by the appellees, Linda Patty and her father Carl Patty, and charged with negligent operation of their bus.
The case was tried before a jury which returned a verdict for the plaintiffs-appellees in the amount of $20,000. The appellants' motion for directed verdict was denied as were their motions for new trial, and judgment notwithstanding the verdict. Thereupon, final judgment was entered for the plaintiffs-appellees.
Appellants contend that the trial court committed reversible error in failing to grant their motions. It is argued that the directed verdict should have been granted in favor of the defendants on the authority of Jacksonville Coach Company v. Rivers, Fla. 1962, 144 So.2d 308; and Blackman v. Miami Transit Company, Fla.App. 1960, 125 So.2d 128, 92 A.L.R.2d 1387.[1] In order *531 to determine the applicability of these cases, it will be necessary to look to the facts involved in the case here on appeal.
Appellee, Linda Patty, a 15 year old girl, boarded appellants' school bus at Ponce de Leon Jr. High School and paid a 20¢ (same as adult) fare for the trip from the school to the bus terminal in Coral Gables. The bus was crowded with children standing in the aisle from the rear of the bus to the front. Appellee was one of the standees, and was holding, with her left hand, a bar handle on the back of the seat. The bus was proceeding when it suddenly "jerked violently" and then proceeded. The following is some of the testimony describing the manner in which the bus slowed or stopped.
"We were just driving along and all of a sudden the bus jerked real hard, and then she [appellee] fell and another girl fell on top of her. * * * Everybody was really jerked." (R-64)
"* * * [A]ll of a sudden the bus jerked very violently. None of us expected it at all. It just jerked real hard and then it went on again, and at that instant Linda [appellee] fell, and this girl standing next to me holding her books, she fell on top of her [appellee]." (R-56)
Appellee, Linda Patty, suffered physical injuries as a result of this fall, when she struck her head on a metal bar on the back of a seat. The record indicates that from where appellee was standing neither she nor those friends who witnessed her falling could see the front of the bus due to the crowded condition of the bus. They could not testify to the reason for this sudden action on the part of the bus driver, and appellant offered no explanation to the jury, claiming that they did not know in which bus the incident occurred.
It is our opinion that the lower court properly denied appellants' motion for a directed verdict. The rule of law applicable to this situation was enunciated by the Florida Supreme Court in the Rivers case, supra, when it quoted approvingly from Judge Carroll's opinion in Blackman:
"`Ruling out stops of extraordinary violence, not incidental to ordinary travel, as inapplicable to the stop which occurred here, the sudden stopping of the bus was not a basis for a finding that the bus was negligently operated, in the absence of other evidence, relating to the stop, of some act of commission or omission by the driver which together with the "sudden" stop would suffice to show a violation of the carrier's duty. This is so because a sudden or abrupt stop, which could be the result of negligent operation, could as well result from conditions and circumstances making it entirely proper and free of any negligence.'" 144 So.2d at 310.
This case is clearly one where the stop was of "extraordinary violence not incidental to ordinary travel", and therefore comes under the exception to the rule as enunciated in Rivers and Blackman.
There was ample evidence before the trial judge to support his denial of the motion for directed verdict and upon appellants' failure to explain away the bus driver's action, the trial court was correct in submitting the case to the jury.[2]
In the Blackman and Rivers cases there was no evidence of a "very crowded" bus, nor was there evidence that anyone besides the plaintiff was caused to fall as a result of the stop. These two facts, being present in the instant case, operate to establish that the stop was of an extraordinarily violent nature, and from this unexplained circumstance the jury was entitled to find that the bus was negligently operated.
Accordingly judgment appealed is affirmed.
Affirmed.
*532 HORTON, Judge (dissenting).
I respectfully dissent from the conclusion reached and the views expressed by the majority.
Accepting the majority's version of the evidence, it boils down to the fact that the bus was stopped suddenly or "jerked violently." There is an absence of evidence that such stop was "not incidental to ordinary travel." I feel that the rule laid down in Blackman v. Miami Transit Company, Fla.App. 1960, 125 So.2d 128, Jacksonville Coach Company v. Rivers, Fla. 1962, 144 So.2d 308, and Miami Transit Company v. Ford, Fla.App. 1964, 159 So.2d 261, is controlling and that the facts in the case at bar do not establish an exception to the rule. What the appellants could be called upon to rebut, on a record as barren of evidence of negligence as the one in the case at bar, casts one into the realm of speculation and conjecture. The jury here was no doubt left in the same dilemma. In such a situation, the trial court should have directed a verdict for the appellant on the authority of the foregoing cases.
NOTES
[1] See also Miami Transit Company v. Ford, Fla.App. 1964, 159 So.2d 261.
[2] Blackman v. Miami Transit Company, supra.