SHANNON, Judge.
The plaintiff-appellant received injuries in a bus operated by the defendant-appellee and filed this suit for damages arising out of said injuries. At the conclusion of her evidence the lower court directed a verdict against the plaintiff, and this appeal ensued.
Plaintiff boarded a bus in St. Petersburg at the Webb’s City bus stop, which is located on the west side of 9th Street South, just north of the intersection of that street with 2nd Avenue South. This intersection was controlled by a traffic control signal light. According to the evidence, plaintiff boarded the bus carrying her purse and umbrella, and the bus was empty except for the driver and one other passenger. This passenger was an acquaintance of the plaintiff, and after plaintiff greeted her and paid her fare she started toward a seat across the aisle from her friend. Before she was able to reach it, however, the driver put the bus in motion, then almost immediately braked it as the traffic light changed. As the bus stopped the plaintiff fell backward toward the front of the bus, and was injured. She was 82 years of age and weighed about 170 pounds, but gave no indication of being physically disabled.
The plaintiff filed her complaint, which the defendant attacked in a motion to dismiss. This motion alleged, inter alia, that the plaintiff had failed to give proper notice to the defendant municipality as required by Chapter 18896, Laws of Florida, Special Acts 1937. This motion was denied, but at the conclusion of plaintiff’s testimony the court directed a verdict for the defendant on the merits. She has submitted but one point in her appeal, which she phrases as follows: Did the plaintiff prove a prima facie case? The defendant divided the plaintiff’s question into two subquestions as follows: (a) Was there sufficient proof of a jerk or jolt of unusual nature? And (b) Did the defendant-appellee have a duty to keep its bus stationary until the plaintiff was seated? In addition to the question posed by the appellant, the appellee poses two further questions, one of which is: Does a notice statute providing for a required notice for personal injuries require that notice be given if a suit is brought for personal injuries based on violation of a contractual obligation? We shall discuss these questions in the order in which they have been set out.
In the first question posed it is important to notice that the plaintiff had already entered the bus and paid her fare. There is no showing in the record that she was infirm or in need of assistance. The testimony showed that she was very active and that she had used the buses, including the *777 one on which she was injured, many times in the past. There is no question of the bus driver’s duty to help her on the bus or aid her in any way in getting into it, as she neither needed nor requested help. In the transcript concerning the movements of the bus she testified, in part: v
“Q Was the way the bus was operated on that day any different from the usual way.
“A I don’t know.
“Q You don’t know?
“A I don’t know.
“Q Mrs. Nicholson, do you remember the date you were called to the First Federal Building for the purpose of a discovery deposition ?
* * * * * *
“THE WITNESS: Yes.
“Q Remember some of the questions thet were — occurred on that date?
“A Yes, sir.
“Q Do you remember these questions and these answers — ■
******
"Q (Reading) ‘Q Well, was the way the bus started in this case any different from the way it was when it usually started ? A Well, it was different to me, sir.’ Do you recall those statements being made?
“A Yes, sir, I do.
“Q Well, yes, but did the bus start more abruptly than it usually starts ?
******
“Q Your answer today would be the same as it was then ?
“A Um-hum, I can’t tell you.
“Q (Reading) ‘Q You don’t know whether it started or not? A Yes, it started.’
“A Sure, it started.
“Q Your answer would still be the same?
“A Yes, sir.
* * * % * *
“Q And did you answer, ‘Sure. Sure.’?
“A Um-hum. Yes, I did.
“Q Then, your testimony today wouldn’t be any different than it was then?
“A No, sir.
“Q This is the usual type of start this bus made?
“A Yes, sir.”
These parts of the plaintiff’s testimony are particularly relevant in light of the law which must be applied herein, as will be shown below.
The plaintiff-appellant cites several cases upon which she bases her argument that the court erred in directing a verdict against her. These cases are Jacksonville Coach Company v. Rivers, Fla.1962, 144 So.2d 308; Blackman v. Miami Transit Company, Fla. App.1960, 125 So.2d 128; and Kantor v. City of Coral Gables, 1944, 154 Fla. 523, 18 So.2d 477, together with several other cases setting out the law with reference to directed verdicts: Harper v. Mangel, Fla.App.1963, 151 So.2d 346; and Farber v. Houston Corporation, Fla.App.1963, 150 So.2d 732.
For the purpose of clarifying the law as it now exists on this particular question, it is necessary for us to examine some of these cases. In the process of such examination, it must be kept in mind that the plaintiff has, by her own testimony, established that the bus was being operated at the time of the mishap in “its usual manner.” There are a number of cases where the passenger has been injured by a sudden or violent movement which could not be normally expected. In Blackman v. Miami *778 Transit Company, supra, the plaintiff, an eight year old minor, was sitting in a bus when “[t]he bus made a sudden or ‘quick’ stop. The boy fell over or was thrown forward (to his right) and struck his head against a metal bar. The only evidence of the speed of the bus was testimony by the boy and his mother that the bus was going ‘fast’, and the only evidence of a sudden stop was the mother’s testimony that it stopped ‘quickly.’ ” Sustaining the directed verdict for the defendant, the court said, in part:
“Ruling out stops of extraordinary violence, not incidental to ordinary travel, as inapplicable to the stop which occurred here, the sudden stopping of the bus was not a basis for a finding that the bus was negligently operated, in the absence of other evidence, relating to the stop, of some act of commission or omission by the driver which together with the ‘sudden’ stop would suffice to show a violation of the carrier’s duty. This is so because a sudden or abrupt stop, which could be the result of negligent operation, could as well result from conditions and circumstances making it entirely proper and free of any negligence.”
The Florida Supreme Court had this question before it in Jacksonville Coach Company v. Rivers, supra, on a petition for writ of certiorari which alleged a conflict in decisions of the First District and the Third District. The facts were set out in the opinion as follows:
“The plaintiff testified that she was looking to her right and talking to her neighbor, Lillie Bell Teel, when the stop occurred; that she did not know the reason for the stop and that she did not see any other person fall. Lillie Bell Teel testified that they were sitting in the front seat; that she was seated next to the window on the right; that the bus ‘was going a little fast’, ‘pretty fast’, but she could not more accurately estimate the speed; that she was talking with the plaintiff and ‘didn’t pay attention to what was coming’; that the bus made a sudden stop and threw the plaintiff out of the seat; that the bus ‘was fixing’ to make a turn; that after the stop she looked up and saw a car in front of the bus.”
And the court in affirming the judgment entered by the trial court said:
“The facts of the cause before us are the same as those recounted in the Blackman case, supra, in that, in both cases, there was evidence of a sudden but unexplained stop; the same indefinite evidence touching the speed of the bus; the same failure to show any act of commission or omission which, together with the sudden stop, would demonstrate a violation of the carrier’s duty.”
In Miami Transit Company v. Ford, Fla.App.1964, 159 So.2d 261, where the facts were almost identical with the instant case, the record shows:
“The evidence, as reflected by the record on appeal, reveals that Mabel Ford had boarded a Miami Transit Company bus at about 12:00 o’clock noon on March 21, 1960; paid her fare and was proceeding to a seat when, according to Mabel Ford: ‘* * * Well, he suddenly applied the brakes and it threw me backwards — and I sort of went backwards to the side and I hit that bar in the back of the driver’s seat. * * * ’ She claimed she didn’t know the reason for the sudden stop, but further testified the bus driver said: ‘ * * * I am sorry, I had to stop suddenly to keep from running into a car.’ * * * ”
The court, in holding that there should have been a directed verdict for the defendant, said:
“ * * * This was the entire testimony as to the facts surrounding the accident. This testimony [that the bus stopped suddenly without a showing of reason *779 or circumstances] does not constitute sufficient evidence to establish any negligence on the part of the bus driver which would warrant the cause being submitted to a jury. * * * ”
And finally, in City of Coral Gables v. Patty, et al., Fla.App., 162 So.2d 530, decided by the Third District under date of March 17, 1964, the court reviewed several of the foregoing Florida cases. However, that case was decided on the theory that the plaintiff was “jerked violently.” The court in its opinion clearly stamps the case as one of “extraordinary violence not incidental to ordinary travel.” And even though it was decided on the theory of extraordinary violence, it is noted that Judge Horton dissented, stating that the cases of Blackman v. Miami Transit Company, supra, and Miami Transit Company v. Ford, supra, were controlling.
After a studied consideration of the foregoing case law, and especially in light of the rule as set forth in the Blackman and Ford cases, we find and so hold that the lower court correctly ruled for the defendant on the facts presented. We therefore affirm the decision of the lower court.
Our affirmance would seem to render the appellee’s cross assignments of error a moot question. Nevertheless, we feel that the appellee’s point requires attention in light of the uncertainty caused by the state of the law in Florida as it now exists. The very interesting question raised by the ap-pellee revolves around the question of whether or not the statute requiring notice to the City for personal injuries must be complied with in an action based on the violation of a contractual obligation. The complaint proceeded on the theory of a contractual obligation, and it is admitted that no notice was given. In view of the fact that we will have occasion to compare the acts of different cities, we quote below from the applicable portion of Chapter 18896, Laws of Florida, Special Acts 1937:
“Section 1. From and after the passage of this Act no suit shall be instituted or maintained against the City of St. Petersburg, Florida for damages arising out of any personal injury unless written notice of such claim or injury is within sixty days from the date of receiving alleged injury, given to the City Manager of the City of St. Petersburg with specifications as to the time and place of said alleged injury.” (Emphasis added).
The lower court was persuaded by the cases of Doyle v. City of Coral Gables, 1947, 159 Fla. 802, 33 So.2d 41, and Goff v. City of Fort Lauderdale, Fla.1953, 65 So.2d 1, in its decision that the municipal ordinances were not applicable except in cases on tort, and hence it denied the defendant’s motion. We must therefore look to the ordinances involved in these cases to see whether or not they are the same as the one in St. Petersburg. In doing so, it must be kept in mind that these ordinances are to be strictly construed as expressed in 63 C.J.S. Municipal Corporations § 923b.
“Such statutes or charter provisions cannot be extended by implication beyond their own terms, and therefore will not require such notice with respect to damages which are not within the intention of the statute; in this sense the provisions have been strictly construed as in derogation of the common law.”
In the case of Doyle v. City of Coral Gables, supra, the applicable portion of the city ordinance is found in Chapter 13972, Laws of Florida, Special Acts 1929, as follows :
“No suit shall be maintained against the City for damages arising out of any tortj unless written notice of such claim was, within sixty days after the day of receiving the injury alleged, given to the City Attorney with specifications as to time and place of the injury. * * ” (Emphasis added).
And in the case of Goff v. City of Fort Lauderdale, supra, we have this provision *780 in the ordinance, found in Chapter 10552, Laws of Florida, Special Acts 1925:
“Damages — No suit shall be maintained against the City of Fort Lauder-dale for damages arising out of a failure to keep in proper condition any sidewalk, pavement, viaduct, bridge, street, or other public place, or by reason of any imputed negligence of said City, in any case, unless it shall be made to appear that the damage alleged is attributable to the negligence of the City, and that written notice of such damage was, * *
While the latter provision did not specifically use the term “tort,” as do various other city ordinances, our Supreme Court could and did construe the word “negligence” as being applicable only to tort actions.
It is quite true that our Supreme Court in Holbrook v. City of Sarasota, Fla.1952, 58 So.2d 862, held essentially that when a statute requires notice to be given in actions m tort or actions sounding in tort, the court will not extend this statutory provision to include actions in contract. In the Holbrook case there was only one question presented, and the court followed the generally accepted principle of law that it cannot extend a statutory action requiring notice. The Sarasota ordinance specifically limits the ordinance to actions “rising out of any other tortious action or actions sounding in tort.”
The appellee has cited us to the only case bearing directly on this question, which case is Klingbeil v. Saucerman, 1917, 165 Wis. 60, 160 N.W. 1051, 1 A.L.R. 1311, where the court had before it the following statute:
“No action to recover damages for an injury to the person shall be maintained unless, within two years after the happening of the event causing such damages, notice in writing, signed by the party damaged, his agent or attorney, shall be served upon the person or corporation by whom it is claimed such damage was caused, stating the time and place where such damage occurred, a brief description of the injuries, the manner in which they were received and the grounds upon which claim is made and that satisfaction thereof is claimed of such person or corporation.”
The court had previously held that this section applied to actions in tort, but this was the first time that they were confronted with the question as to whether the provisions were applicable to actions in contract. In holding the section was applicable the court said:
“ * * * It was stated in Frechette v. Ravn, supra, 145 Wis. 589, 130 N.W. 453 that an action in tort for malpractice was ‘plainly one to recover damages for injuries to the person.’ Why? Because defendant’s conduct resulted in an injury to the person of plaintiff. If it did so because of the tort, which consisted in a breach of duty created by law, it is difficult to see why it does not do so when the same identical conduct produces the same identical result, though the complaint charges the breach of a duty created by contract between the parties instead of the breach of a duty created by law. Damages may flow from the breach of both duties, and likewise an injury to the person may result from the breach of a contract as well as from a tort. Where, as in malpractice, there is an option to sue in tort or on contract, each cause of action is grounded upon the same identical acts of the defendant, namely, his failure to exercise the proper skill or care, or both. The very same conduct gives plaintiff his option as to remedies. Hence, if defendant’s conduct when sued in tort gives rise to an action for injuries to the person, the very same conduct must give rise to the same kind of action when sued on contract. The word ‘action’ as used in the statute has reference to the subject-matter or nature thereof, not to its form as a matter of remedial procedure. Whether it be in tort or on contract, it is an *781 action to recover damages for injuries to the person, and comes alike under the terms of the statute, since the phrase therein, ‘no action to recover damages for injuries to the person’ refers to bodily injuries, and not to injuries to feelings. Wysocki v. Wisconsin Lakes I. & C. Co., 125 Wis. 638, 104 N.W. 707.”
It is interesting to note that in an annotation at 1 A.L.R. 1313, it is stated:
“The holding in' the reported case (Klingbeil v. Saucerman) that the phrase, ‘actions to recover damages for injury to the person,’ includes actions ex contractu, appears to be in harmony with the weight of authority. Almost all of the courts seem to regard such a statute as creating a special class of cases, ‘carved out of the general classes’ created by the general Statute of Limitations.
“Where a statute limits the time in which an action for ‘injuries to the person’ may be brought, the statute is applicable to all actions, the real purpose of which is to recover for an injury to the person, whether based upon contract or tort, in preference to a general statute limiting the time for bringing actions ex contractu. (Citing many cases).”
The purpose of the various ordinances that we have cited is to protect the municipality from the expense of needless litigation, give it an opportunity for investigation, and allow it to adjust differences and settle claims without suit. The municipality is given an opportunity to determine whether it prefers to adjust the claim without suit or to contest its validity in the courts. And more important, such ordinances allow the municipalities to protect themselves by collecting their proof while the witnesses are still at hand, with the facts fresh in their minds. And the fact that the person injured is suing under a contract theory rather than a tort theory should make no difference so long as the ordinance simply specifies that notice shall be given “for damages arising out of any personal injury.” We feel that the law and the policy behind the law requires that ordinances such as the St. Petersburg ordinance should be complied with, and that the law shall remain in keeping with the principles set out in Klingbeil v. Saucerman, supra.
The decision of the lower court is affirmed.
ALLEN, Acting C. J., and WHITE, J., concur.