**SEABOARD COAST LINE RAILROAD COMPANY, Plaintiff-Appellee, Cross-Appellant,**

v.

**TENNESSEE CORPORATION, Defendant-Appellant, Cross-Appellee.**

No. 28007.

United States Court of Appeals, Fifth Circuit.

Jan. 27, 1970.

Rehearing Denied Feb. 19, 1970.

---

David H. McClain, T. Paine Kelly, Jr., W. S. Rodgers, Jr., MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., for appellant, cross-appellee.

Richard W. Reeves, Allen, Dell, Frank & Trinkle, Tampa, Fla., for appellee, cross-appellant.

Before JOHN R. BROWN, Chief Judge, and TUTTLE and MORGAN, Circuit Judges.

TUTTLE, Circuit Judge:

This appeal presents again the question under the Florida Law: under precisely what contractual relationships may one of two contracting parties be indemnified by the other for injury or damage resulting from its own negligent acts? If this were an article other than an opinion of a court it might be entitled, "Jacksonville Terminal Company Revisited," Jacksonville Terminal Co. v. Railway Express Agency, Inc., *(5 Cir., 1961) 296 F.2d 256. The revisiting is necessary because since this court decided the *Jacksonville Terminal Company* case, the courts of the State of Florida have established new principles of law in this field that, of course, in a diversity action we accept as binding.

The plaintiff railroad in counts one and two of the complaint sought to recover from the defendant Tennessee Corporation the sum of $15,511.28, representing property damage to the plaintiff's locomotives, cars and trackage arising out of a collision which occurred on the Tennessee Corporation's premises on the night of February 8, 1964 when a train owned and operated by the defendant "Using its [Tennessee's] own power and railroad equipment" collided with a train owned and operated by the other. In Count three the plaintiff railroad sought to recover attorney's fee and costs incurred in defending a previous suit brought against the plaintiff by one Herman L. Johns, an employee of the Tennessee Corporation, who was injured in the collision. Counts one and three of the complaint were based on contractual indemnity whereas count two was based on negligence.

Upon motion duly made, the trial court dismissed count two as being barred by the Florida Limitations of Actions Statute of three years for an action injuring personal property, in that count two was based on negligence. At the same time, the court denied the motion to dismiss the claims asserted in counts one and three in that they alleged a right to recover based on contractual indemnity.

Having stricken a defense alleging negligence of the plaintiff railroad company as a defense to the suit, thus construing the contractual indemnity agreement as covering injury caused under the circumstances of the case whether caused by the negligence of the railroad or not, the trial court entered a summary judgment on counts one and three for the railroad and, after conducting an

appropriate hearing, made findings of fact and final conclusions of law with respect to the amount of damages to be awarded.

As we have indicated, the principal contention here is that Tennessee should have been permitted to prove that it was the railroad's negligence that caused the injury to the railroad's equipment, and thus Tennessee would not be liable, this contention being based upon its construction of the contractual arrangements between the parties which it contends did not satisfy the Florida requirements of a contract by which one party intends to indemnify another against its own negligent acts. Secondarily, Tennessee complains of the failure of the trial court to dismiss the action for damages for injury to the personal property, even though arising under the indemnity contract rather than being based on common law negligence, since Tennessee contends that the three year statute would bar all actions for injury to personal property no matter how arising. Finally, Tennessee takes exception to some of the items of damages included in the final award.

Once again, we pose the principal question, and then state as best we can the present state of the Florida law. The principal question is by what formulation of language may two parties contract in a manner that will require one of them to indemnify the other against all loss or claim or injury which it may suffer, even though the loss, claim or injury is attributable to its own negligent conduct. Next, the law applicable to the solution of this problem has now been stated by the Florida Appellate Court in a manner differently than this court decided in *Jacksonville Terminal Co., supra,* in which we found that the Florida court had not adopted what was then called the "majority rule" and that under the Florida law "we do not hesitate to conclude that Railway Express Agency's promise to indemnify Jacksonville Terminal Company 'for all losses, etc.' clearly and unequivocally manifests an intention to absolve Jack-

sonville Terminal Company from liability for all losses, including those caused by its own negligence." Gulf Oil Corp. v. Atlantic Coastline R. R. Co., 196 So.2d 456 (Fla.App.1967), cert. den. 201 So.2d 893. In that case the plaintiff, Gulf Oil Corporation, brought suit against the railroad seeking a declaratory judgment as to whether the oil company was required to indemnify the railroad under a licensing agreement for the railroad's own negligence. Under the existing agreement, the oil company was allowed to maintain pipelines on the railroad's premises. Two employees of the plaintiff oil company were burned and received personal injuries while working on the railroad's premises, and they brought suit against the railroad charging it was negligent. The employees' claims were settled by the railroad for $100,000 and the railroad sought indemnity from the oil company under the license agreement. The indemnity provision there before the court read as follows:

"Fourth, that licensee shall and will at all times indemnify and save harmless the licensors, their successors and assigns, from, and will pay and discharge all loss, costs, expense and damage to persons or property resulting from or in any manner connected with the laying, maintenance, operation or presence of said pipelines or contents thereof on the premises of the licensors or the removal of said pipelines therefrom."

The Florida Court of Appeals reversed the trial court's finding that the plaintiff oil company had agreed to indemnify the railroad for the railroad's own negligence, and said:

"It is evident, then, that Florida decisions hold that an indemnity agreement which indemnifies against the indemnitee's own negligence must state this in 'clear and unequivocal' language. It is also clear that in Nat Harrison Associates, Inc. v. Fla. Power & Light Co., 162 So.2d 298 (D.C.A. Fla.1964) and Fla. Power & Light Co. v. Elmore, [Fla.App., 189 So.2d 522]

supra, the court ruled that the words 'against any liabilities whatsoever' did not constitute 'clear and unequivocal' language which was sufficient to indemnify the indemnitee against its own negligence. The language of the Elmore decision indicates that the court adopted the majority rule that there can be no presumption that an indemnitor meant to assume liability for an indemnitee's negligence unless there is explicit reference to the indemnitee's negligence in the contract. We likewise conclude that in order for an indemnity clause or contract to indemnify against an indemnitee's own negligence, the clause or contract must expressly state that such liability is undertaken by the indemnitor.

"Thus is (sic) would appear that the majority rule is the better, and that in order for one to indemnify against indemnitee's own negligence general language will not suffice. The term clear and unequivocal goes to the specific indemnification; that is, the language 'any liabilities whatsoever' as used in the Elmore case, supra, as well as 'shall and will at all times indemnify and save harmless * * * and will pay and discharge all loss,' the language used in the instant case, is not the clear and unequivocal language sought, but rather there must be language specifically designating indemnification against one's own negligence.

"The language of the indemnity clause in the instant case contains no reference to indemnifying against the negligence of the indemnitee which is necessary to exclude it from the majority rule, and thus it was error for the trial judge to enter a declaratory judgment finding the clause did indemnify defendants against their own negligence."

 It appearing then that the intention to indemnify one against his own agents must be specifically provided for in an indemnity contract, we now look at the terms under which the parties

here before the court were operating. (Emphasis has been added wherever it appears in the following quotations.)

"(c) The Industry will promptly, at its own cost and expense, and subject to all proper demurrage and other charges, load or unload all cars which are on said sidetrack for loading or unloading by the industry; that, (except as provided in Article 6(g) hereof,) it will not allow cars delivered to the Industry on said sidetrack to be removed therefrom except by the railroad; and that in the event of damage to or destruction of any such cars while on said sidetrack, whether due to improper use of the cars by the Industry, or agents or employees of the Industry or to fire, or to any other cause traceable to said Industry, *unless the same be the result of negligence of the agents or employees of the Railroad, or third persons,* the Industry will make good and pay to the Railroad the loss due to such damage or destruction of such car or cars.

\* \* \* \* \* \*

"(e) Except as provided for in sub-paragraphs (b) (c) and (g) of paragraph 6 hereof and as hereinafter provided in this sub-paragraph, the Railroad hereby agrees to hold the Industry harmless from any and all claims and demands of every nature on account of injury to person or persons or injury to, or loss of, property of the Industry or the property of such other persons, firms or corporations in the possession and under the control of the Railroad situated on said sidetrack *where caused by the negligence of the Railroad,* its agents, servants or employees, or by any other person or persons, firm or corporation, *provided, however,* that said injury to persons or property, or loss of property, *is not directly caused by the power of the Industry when employed by the industry over the sidetrack,* or by personnel employed by the Industry acting in the course of their employment.

\* \* \* \* \* \*

"(g) The Industry shall have the right to switch *with its own power* over said sidetrack and/or connecting plant tracks of the Industry, excluding the portions of said Track No. 11 north of Station 322 and South of Station 5184, cars delivered to it by the Railroad under the terms hereof, provided, however, that the Industry shall be responsible for and shall indemnify the Railroad from and against any and all claims arising out of the damage to or destruction of said cars and the contents thereof *caused by or resulting from the operation by the Industry of its own power*, regardless of whether such cars are damaged or destroyed while on said sidetrack or whether or not said cars and contents had been delivered to the Railroad as herein provided. The Industry shall assume, and it hereby assumes responsibility for and agrees to pay, and also agrees to indemnify, and hold the Railroad harmless from and against all loss, damage, cost, liability, judgments or expense (including necessary counsel fees) in connection with any loss, injury or damage of *any and every character and howsoever caused,* whether to employees of either party hereto or to third persons, or to the property of either party hereto, or of other persons, that may be sustained or *incurred in connection* with or arising out of the operation of said power of the Industry over the said sidetrack."

Paragraph 3 of the easement grant dated January 21, 1960, which was incorporated into said agreement, reads as follows:

"3. The party of the second part (railroad) covenants and agrees to hold the party of the first part (industry) harmless from any and all claims and demands of every nature on account of injury to person or persons or injury to or loss of property of the party of the first part or to the property of such other persons, firms or corporations in possession and under the control of the party of the second part hereto, situated on the hereinbefore described property *where caused by the negligence of the party of the second part*, its agents, servants or employees or by any other person or persons, firm or corporation, *provided, however,* that the party of the first part covenants and agrees to hold party of the second part harmless from any and all claims or demands of every nature on account of injury to persons or damage to or loss of property *which is caused by or results from operation by the industry of its power over the sidetracks located on the easement hereby granted,* or by employees of the party of the first part in the carrying out of the provisions of paragraph 2 hereof."

While it is no particular aid in construing a contract when standards for construction are established by the courts of the state, it is not inappropriate to point out that the construction we give to this contract is not as extreme as it sounds. A contract by Tennessee to indemnify and hold harmless the railroad company for any injury that may arise from the use by Tennessee of railroad equipment, merely means that if such an injury occurs the parties need not undertake to go to battle to determine whose negligent act, if in fact there was negligence at all, produced the injury. It relieves the railroad company, as one of the contracting parties, from the necessity of disproving its negligence. It merely takes that issue out of the area of controversy. In effect, it seems to us, that in light of the relation of the parties here, the railroad company was simply not willing to permit conjunctive use of railroad equipment by an industrial concern which may well be presumed not to have the same skill in operation of railroad equipment as the railroad company itself without requiring of the industry that it assume absolute liability with respect to any injuries resulting therefrom. The fact that earlier provisions of the contract expressly provided that the railroad company would be liable for its

own negligence in all cases except when the "power" of the industry was used, gives full meaning to the term "howsoever caused" and causes it to have the specificity that is required by the Florida courts.

We turn next to the contention that the claim based on the indemnity agreement was barred by the Florida three-year statute of limitations relating to actions for personal injury.[1]

It is the contention of the appellant Tennessee Corporation that since the "gist" of the action was the damage or injury caused to its railroad equipment, the Florida cases make the three-year statute applicable whether the suit is filed on the theory of negligence or based on a contractual obligation, citing Nicholson v. City of St. Petersburg, 163 So.2d 775 (2d Fla.App.1964) and O'Grady v. Wickman, 213 So.2d 321 (4th Fla.App.1968). It is clear that these decisions stand for the proposition stated in the Wisconsin decision of Klingbeil v. Saucerman, 1917, 165 Wis. 60, 160 N.W. 1051, 1 A.L.R. 1311, because they expressly adopt the principles stated in that case. The principle may be stated as follows: "Where a statute limits the time in which an action for 'injuries to the person' may be brought, the statute is applicable to all actions, the real purpose of which is to recover for an injury to the person, whether based upon contract or tort, in preference to a general statute limiting the time for bringing actions ex contractu."

The difficulty with application of this principle to the case before us is that this is not an action at all for injury to the goods or chattels of the railroad corporation. It is a suit for breach of Tennessee Corporation's agreement to indemnify the railroad in the event of any loss or injury, and the cause of action accrued only after a demand for indemnification had been made and this

had been refused. It is not an action based on negligence, because, as pointed out above, the parties eliminated the theory of negligence as a basis for recovery. It is a right created only by contract, and as to which no alternative claim for damages upon a theory of negligence is now present in the case. We conclude that the trial court properly overruled the motion to dismiss the indemnification counts as being time barred.

We have carefully considered the remaining objection by the appellant to the inclusion of overhead items and other challenged items in the element of damages. We agree that the trial court properly concluded that true indemnification would contemplate the inclusion of these items as an element of damages for breach of the contract.

The judgment is affirmed.

---

1. Section 95.11. Limitations upon actions other than real actions—
 Actions other than those for recovery of real property can only be commenced as follows:

\* \* \* \* \*
(5) Within three years \* \* \*
 (c) An action for taking, detaining or injuring any goods or chattels \* \* \*."