LAWRENCE, Judge.
Appellant, Linda McFarland (Mrs. McFarland), was injured while riding in a taxicab owned by appellee, Greater Jacksonville Transportation (GJT). Mrs. McFarland’s husband, appellant Joseph McFarland (Mr. McFarland), was a passenger in the taxicab, but was not injured. The trial court granted summary judgment in favor of GJT. We reverse.
The facts recounted by Mr. McFarland were that just before the injury occurred, he noticed that the taxicab driver was approaching a red light at an intersection too rapidly, and that he “knew [the taxicab driver] was going to have to hit his brakes real hard_” He braced himself against a plexiglass partition between the driver and passengers just as the driver braked, but Mrs. McFarland, unprepared for the.stop, fell forward, hit her head on the partition, and was knocked unconscious. Mr. McFarland further testified in his deposition that he heard a short squeal when the taxicab stopped, and that the stop “should have [left skid marks].” When asked how fast the taxicab was traveling when it started to brake for the intersection, he said that the cab was traveling at “probably 45, 50 [m.p.h.].” He said that the speed limit in the area was “probably 45 [m.p.h.]. It may be 35 [m.p.h.],” and noted that the taxicab driver appeared to be hurrying. Mrs. McFarland was hospitalized for two days following the incident.
The McFarlands sued GJT for damages arising from Mrs. McFarland’s injuries. The trial court granted GJT’s motion for summary judgment on the grounds that the McFarlands had failed to provide any facts indicating negligence on the part of GJT, and that the taxicab driver’s stop was “incidental to ordinary travel.” We disagree.
In Rogers v. Orlando Transit Co., 70 So.2d 551 (Fla.1954), a passenger was injured when the bus on which she was a passenger made a sudden stop at a traffic light. Although the issue in Rogers was whether the trial court erred in giving instructions regarding the plaintiffs alleged contributory negligence, the supreme court noted-that:
[T]he bus driver knew, or should have known, of the existence of the stoplight and it was his duty in exercising proper care of his passengers to guard against the hazard of the stoplight. The passenger had the right to rely upon the bus driver and the driver’s duty owed to the passengers. There is no duty placed upon the *128 passenger who had paid her fare for safe transportation to be on constant guard for stoplights and the manner in which the bus driver may stop the bus for such lights.
Id. at 553.
Subsequently, our supreme court, in Jacksonville Coach Co. v. Rivers, 144 So.2d 308 (Fla.1962), held that a passenger who fell from her seat when her bus made a sudden stop while attempting to negotiate a turn was precluded from recovery in the absence of evidence showing excessive speed or “any act of commission or omission which, together with the sudden stop, would demonstrate a violation of the carrier’s duty.” Id. at 311. Significantly, the court distinguished the facts in Rivers from the sudden stop at a traffic light in Rogers. The Rivers court agreed that a carrier who knew of the existence of a stop light, and thus should have known that a stop soon would be necessary, owed a duty to its passengers to exercise care in bringing the vehicle to a safe stop. The Rivers court explained that a different situation arose when the carrier was not approaching a stop light. In the latter situation, where the carrier was attempting to negotiate a turn, any sudden or abrupt stop “ ‘could be the result of negligent operation, [or] could as well result from conditions and circumstances making it entirely proper and free of any negligence.’ ” Rivers, 144 So.2d at 310 (quoting Blackman v. Miami Transit Co., 125 So.2d 128, 130 (Fla. 3d DCA I960)).
The material facts in the instant case present a genuine issue of whether GJT’s driver should have known of the impending stop and exercised proper caution to assure the safety of his passengers. GJT offered no facts in support of its motion, such as an emergency or other relevant reasons, to explain why the sudden stop occurred. Evidence of excessive speed, although rather tenuous in this record, is unnecessary in the instant case to create a genuine issue of material fact. The sudden stop at a traffic light, accompanied by evidence of skidding tires, without a reasonable explanation, is sufficient to create a jury question on the issue of whether GJT’s driver was negligent.
Accordingly, we REVERSE the summary judgment and REMAND to the trial court for consistent proceedings.
REVERSED.
BARFIELD, C.J., and ALLEN, J., concur.