GRIFFIN, J.
Rosa Peterson [“Peterson”] appeals a final order of the Seminole County Circuit Court granting a directed verdict in favor of defendant, Central Florida Regional Transportation Authority d/b/a Lynx Transit System [“Lynx”] in a negligence action. Peterson sought damages for injuries sus *419 tained resulting from a fall while a passenger on a bus owned and operated by Lynx.
At trial, Sandy Smith, Peterson’s sister-in-law, testified that after finishing work she and Peterson at approximately four p.m. caught the Lynx bus home to Apopka. Both Smith and Peterson were frequent riders on this bus route. Shortly after they left work, Smith and Peterson were caught in an afternoon summer thunderstorm and walked to the bus stop in hard rain.
When the bus arrived, Smith entered the bus first, followed next by a female passenger, and then by Peterson carrying a large, wet bag. Peterson began moving to the back of the bus towards Smith who was already seated near the back of the bus. As the bus began to move, Smith testified that she saw Peterson slip and fall:
Q. Where were you looking at when the bus began to pull off?
A. Rosa coming to the back. When the bus started to pull off — by then Rosa had got on the bus and the bus started to pull off. As it pulled off, that’s when I seen her. She fell in front of me.
Q. Well, because the jury wasn’t there, how about describing exactly how she fell.
A. Okay. At the back of the bus — I went to the back of the bus and I sat, you know, like this, facing the front. And he [driver] was standing up there talking to someone. Rosa put her money in, then started to the back. And when he pulled off she slipped and fell.
In fact, Smith testified that Peterson struck Smith’s knee as she fell. Smith could not remember whether Peterson was holding onto a hand rail before the incident, but testified that the floor of the bus was wet that day:
Q. So what caused her to fall was the bus pulling off?
A. Yeah, because when I got on there the little mat that was on the floor, it was slippery for me.
Later on direct, however, Smith clarified her early statements by testifying that Peterson fell as a result of a jerk of the bus as it was moving into traffic:
Q. Now, you stated the bus started to pull off as if it were going back on 436. I’m going to assume that’s where it was heading; is that correct?
A. Yes.
Q. Okay.
A. The traffic light. There’s a lot of traffic in the afternoon. When the bus driver got ready to pull off he stopped I guess because the traffic was coming and, you know, then that’s when, you know, she slipped and fell. But the bus — he did like you know how you jerk a little bit when you’re driving, you’re trying to get in traffic.
Also, on cross-examination, Smith testified that it was a jerk of the bus, after the bus had begun to move, that caused Peterson’s fall:
Q. And so when the bus started to move, the initial movement of the bus did not cause her to fall, she fell a few seconds later; is that correct, when she got to the back of the bus?
A. She wasn’t quite to the back of the bus. When the guy pulled off, that’s when she slipped and fell because he was trying to get in traffic, then he stopped, then she slipped and she fell.
On cross-examination, Smith was adamant that the jerk of the bus was caused by the bus moving into traffic:
Q. Do you have any idea what caused the bus to stop or make this sudden jerk, I mean, without guessing about it? Do you actually know?
A. Going out in traffic. It was midday time for the people to get off from *420 work and there was a lot [of] traffic coining on 436. You ever travel on 436?
Q. Did you actually see that happen?
A. I seen the traffic, yeah. I seen the traffic. I was sitting by the window. I seen the traffic.
The bus driver, Patrick Jarrett, testified that on the day of the accident, he had eighteen passengers on a bus that could hold forty. Traffic was moderate and it was raining. The aisle of the bus had a rubber non-slip surface. Jarrett testified that he had received training from Lynx before commencing his employment that when the floor of the bus is wet to “always think of [the] safety of the passengers and always be cautious.” According to Jarrett, traffic was normal and no person or car pulled out in front of the bus causing him to stop the bus.
Rosa Peterson testified that she worked her way to the back of the bus with a bag in her hand. As she was walking back, she noticed the bus was crowded, the floor was wet and there were puddles on different parts of the floor. The driver then started the bus, she grabbed the railing and paused before she again moved towards the back of the bus. The next thing she realized, she was on the floor.
Although Peterson could not testify as to what caused her fall other than the “bus caused me to fall,” she remembered that it was not the initial moving of the bus:
Q. Would you agree that when the bus initially began to move, you did not ' fall?
A. When the bus moved, no, I didn’t fall.
Q. In fact, you really don’t know what caused you to fall; isn’t that correct?
A. Sir, when I walked down there and I felt the jerking of the bus I hold on to that rail, and I thought it was safe for me to walk on to finish getting in my seat. And the next thing I know, the only thing I remember, I was on the floor.
She also did not know if the jerk she felt before the fall was from the driver hitting the brakes or the shift of the gears:
Q. You don’t know specifically that the bus driver ever touched the brake with his foot, do you?
A. I can’t say that because I wasn’t up there. I don’t know where the brakes are. The only thing I know I just felt a jerk in the bus.
Q. Could it have been the bus just shifting into gear?
A. Could have been.
When considering a motion for directed verdict, the trial court must evaluate the testimony in a light most favorable to the plaintiff including every reasonable inference deduced from the evidence. Cecile Resort, Ltd. v. Hokanson, 729 So.2d 446, 447 (Fla. 5th DCA 1999). Although it is generally held that whether a defendant properly discharged its duty of care is a question for the jury, Association for Retarded Citizens-Volusia, Inc. v. Fletcher, 741 So.2d 520, 526 (Fla. 5th DCA), review denied, 744 So.2d 452 (Fla.1999), there was no competent evidence of negligence on the part of the driver in the instant case. For example, there is no testimony that the driver negligently pulled into traffic or violently stopped the bus.
Peterson argues, however, that the driver was distracted by another passenger. This does not in and of itself establish negligence without evidence of an omission or commission of an act which was the proximate cause of the plaintiffs injuries. See City Cab Co. v. Green, 308 So.2d 540, 543 (Fla. 4th DCA), cert. denied, 321 So.2d 554 (Fla.1975)(inference that taxi driver was distracted by female passenger in front seat did not constitute “inferable negligence” when no evidence was presented as to why driver applied his brakes). Moreover, there was no evidence that the driver was still talking to the female pas *421 senger when the bus began to move into traffic.
Peterson also argues that the driver negligently started the bus while she was standing since it had been raining and the floor of the bus was wet. Peterson, however, could not testify that she slipped on a puddle of water, nor could Smith testify that Peterson fell because of water on the floor. There was testimony that the wet floor was slippery; however, there was no testimony that the wet floor was the proximate cause of Peterson’s fall. Further, although the driver had been trained to use special caution when elderly or handicapped passengers entered the bus and to wait until such persons were seated before moving the bus, Peterson was neither elderly nor handicapped. See Artigas v. Allstate Ins. Co., 541 So.2d 739, 740 (Fla. 3d DCA 1989).
Finally, both Peterson and Smith testified that Peterson did not fall because of the initial movement of the bus, rather, she fell when she proceeded towards the back of the bus after the bus was in motion. Although Smith initially testified that Peterson fell as a result of the first movement of the bus, she later clarified her testimony on both direct and during cross-examination that the secondary jolt when the bus merged into traffic actually caused Peterson’s fall. There was no testimony, however, that the bus driver stopped or jerked the bus in any way other than normal operation.
In Jacksonville Coach Co. v. Rivers, 144 So.2d 308, 310 (Fla.1962), our supreme court articulated the rule to be applied when injuries are sustained as the result of the sudden stop of a passenger bus. The supreme court in Jacksonville said:
Ruling out stops of extraordinary violence, not incidental to ordinary travel, as inapplicable to the stop which occurred here, the sudden stopping of the bus was not a basis for a finding that the bus was negligently operated, in the absence of other evidence, relating to the stop, of some act of commission or omission by the driver which together with the ‘sudden’ stop would suffice to show a violation of the carrier’s duty. This is so because a sudden or abrupt stop, which could be the result of negligent operation, could as well result from conditions and circumstances making it entirely proper and free of any negligence.
Jacksonville, 144 So.2d at 310, citing Blackman v. Miami Transit Co., 125 So.2d 128, 130 (Fla. 3d DCA 1960). Accordingly, the supreme court held:
The facts of the cause before us are the same as those recounted in the Black-man case, supra, in that in both cases, there was evidence of a sudden but unexplained stop; the same indefinite evidence touching the speed of the bus; the same failure ' to show any act of commission or omission which, together with the sudden stop, would demonstrate a violation of the carrier’s duty.
Jacksonville, 144 So.2d at 311. See also Nicholson v. City of St. Petersburg, 163 So.2d 775 (Fla. 2d DCA 1964); Miami Transit Co. v. Ford, 159 So.2d 261, 262 (Fla. 3d DCA), cert. denied, 166 So.2d 594 (Fla.1964). Cf. Transit Cas. Co. v. Puchalski, 382 So.2d 359 (Fla. 5th DCA 1980), review denied, 392 So.2d 1380 (Fla.1981).
AFFIRMED.
THOMPSON, C.J., concurs specially without opinion, without participation in oral argument.
W. SHARP, J., dissents with opinion.