W. SHARP, J.,
dissenting.
I respectfully dissent. In my view, the issues of Lynx’s negligence (ie., the bus driver’s) and breach of a duty of care towards Peterson should have been resolved by a jury, not a directed verdict in favor of the defendant.
A directed verdict should only be granted if the party opposing the motion could not prevail under any reasonable view of the evidence. Bruce Const. v. State Ex *422 change Bank, 102 So.2d 288, 291 (Fla.1958). Accordingly, Peterson was entitled to have all reasonable inferences from the facts that support her claim resolved in her favor, at this juncture of the case. Conda v. Plain, 222 So.2d 417, 418 (Fla.1969); Ginn v. Broward County Transit, 396 So.2d 804, 805 (Fla. 4th DCA 1981); Cruz v. Hundley, 371 So.2d 698 (Fla. 3d DCA 1979).
The record, when taken most favorably to Peterson’s side of the negligence and duty issue, is not a slam dunk for Lynx. When Peterson and her friend boarded the bus, it was raining very hard. They were wet, and the floor of the bus was wet and puddled. The bus driver was busy chatting with a passenger in the front of the bus when they boarded, so he might not have noticed the fact that Peterson was carrying a large, wet bag, and also that at the time he started pulling away from the bus stop, Peterson was still walking down the aisle, towards her friend who had taken a seat in the rear of the bus.
Peterson and her friend testified that the traffic on State Road 436 that rainy afternoon was very heavy. Before Peterson could reach her intended seat, the bus lurched or braked, probably in response to having to meld into the heavy traffic. This caused Peterson to lose her balance, and slip on the wet floor of the bus. Her friend testified the floor was slippery for her and inferred it also caused Peterson’s fall. The fall resulted in Peterson’s injuries, at issue in this lawsuit.
The bus driver testified he had been trained by Lynx that if the floor of the bus is wet, to “always think of [the] safety of the passengers and always be cautious.” That included making sure the passengers were seated, or holding onto handrails before moving the bus, particularly if a person is elderly or handicapped. He had no recollection of Peterson boarding the bus, or falling, until a “disturbance” in the back of the bus caused him to stop and check on a passenger (Peterson) who was on the floor.
The majority relies on an older Florida Supreme Court case, Jacksonville Coach Co. v. Rivers, 144 So.2d 308 (Fla.1962), as being determinative of this one. I disagree. In Rivers, a passenger was thrown from her seat by a sudden, unexplained stop by the bus, in which she was traveling. The passenger, Lille Bell Teel, testified the bus was going “a little bit fast,” but she did not see what caused the driver to make a sudden stop. The driver testified he was forced to stop suddenly to avoid hitting another vehicle. The court ruled that a directed verdict was correct in that case, notwithstanding the obligation of the defendant as a common carrier, to exercise the highest degree of care consistent with the practical operation of the bus. Rivers evolved the rule of law that barring “stops of extraordinary violence not incidental to ordinary travel,” or other evidence to indicate the bus was handled in a careless or negligent manner, or that the accident was caused by a mechanical defect in the bus, it is appropriate to direct a verdict for the common carrier. I submit there was other evidence in the instant case to show negligence concerning the way the bus was handled.
In Transit Casualty Co. v. Puchalski, 382 So.2d 359 (Fla. 5th DCA 1980), this court criticized the Rivers’ rule, suggesting that a better one would be to hold that a presumption of negligence arises which shifts the burden to the defendant to explain how the accident occurred, in the absence of negligence on the part of the bus driver. However, even though there was no violent stop in the Puchalski case, applying the Rivers’ rule, we held that the “circumstances” in that case permitted a jury to infer negligence (inattention) on the part of the bus driver: the bus had stopped behind two cars, almost touching the last, there was a traffic light ahead of the cars, and there was no evidence another vehicle darted in front of the bus. See also McFarland v. Greater Jacksonville Transportation, 711 So.2d 127 (Fla. 1st DCA 1998) (sudden stop at a traffic light, *423 accompanied by evidence of skidding tires without a reasonable explanation, was sufficient to create a jury question on the issue of the taxi driver’s negligence).
It also appears that the Florida appellate courts have rejected a per se rule that a bus driver has no duty to wait for a boarding passenger to sit down before starting to move, unless the passenger appears to be infirm, in need of assistance, or requests help or assistance. Metropolitan Dade County v. Asusta, 359 So.2d 58 (Fla. 3d DCA 1978). In rejecting such an instruction in that case, the court said:
[I]t is apparent, nevertheless, that if the bus driver reasonably could have anticipated trouble in traffic which might cause him to make a sudden stop, then the fact that his passenger was not seated is a circumstance that the jury could lawfully take into consideration in determining negligence.
Metropolitan Dade, 359 So.2d at 59.
Such circumstances were present in this case. As noted above, the record established there were hazardous driving conditions at the time of Peterson’s fall — heavy rain and heavy traffic — and the floor was wet and slippery. These were conditions which should have alerted the driver not to proceed into traffic until all passengers were seated safely. The bus driver was trained not to set the bus in motion until all passengers were seated or holding handrails, under such conditions. Compare Artigas v. Allstate Insurance Co., 541 So.2d 739 (Fla. 3d DCA 1989).
The argument was made that the bus driver did not violate his training instructions because the “not starting the bus until passengers were seated” rule only applied to elderly or disabled passengers. But a construction of the rule in Peterson’s favor is not so limited, and as the driver stated it on the record, it could apply to all passengers where hazardous driving conditions are present. In addition, the record established that Peterson was carrying a large bag, which inhibited her from catching onto handrails or seat backs, with both hands to steady herself. Such conditions, or others (for example, passengers carrying multiple packages or small children), able-bodied persons may also merit special concern about their ability to reach a seat before the bus commences its path of travel.
In my view, the instant case is factually closest to Ginn. In Ginn, a passenger paid her fare, after boarding a bus, and asked the driver for a transfer. The driver told her to hold onto the fare box while he made a turn with the bus. He made several turns and stops. When he came to a stop sign, the passenger went towards the back of the bus to find a seat. The driver saw her go towards the back of the bus, but he did not wait until she reached a seat.
The bus moved out into traffic and made a sudden stop or jerk, causing the passenger to fall and become injured. The court refused to apply the sudden stop rule evolved in Rivers, and held it was proper for a jury to determine whether the bus was operated with the highest degree of care consistent with the practical operation of the bus, when the driver prevented the passenger from initially taking her seat, as he drove into traffic. Obviously, part of the negligence or neglect of duty in that case was also the driver’s failure to wait at the stop sign until the passenger reached her seat, after he saw her going to back the back of the bus.
In this case, the bus driver apparently did not notice Peterson get on the bus due to possible inattention, nor did he observe her difficulties carrying the large bag she had in her hands, nor did he wait under hazardous circumstances (heavy rain and heavy traffic) to make sure she was safely seated before pulling the bus out into traffic. In my view, both Ginn and this case are properly ones which should be resolved by a jury.